# The Illinois Central Railroad Company

*v.*

# John W. Carter.

*Filed at Ottawa January 19, 1897—Rehearing denied March 12, 1897.*

1. CARRIERS—*effect of accepting goods marked for point beyond terminus.* In the absence of restrictions, consented to by the shipper, limiting its contract of carriage to its own line, a carrier, by accepting for shipment goods marked to a point beyond its own terminus, impliedly agrees to carry the goods to their destination.

2. SAME—*how liability beyond terminus may be restricted.* A carrier may refuse to assume the responsibility of a through carrier, and by contract with the shipper may restrict its liability to its own line; but it cannot do so by a mere stipulation in a bill of lading not signed by the shipper, without proof that the shipper accepted the same consenting to the restriction.

3. SAME—*liability of carrier by rail terminates without notice to consignee of arrival.* The liability of a carrier by rail, as carrier, terminates upon the delivery of the goods at a secure depot or warehouse at the point of destination, though beyond its own line, without notice to the consignee of the arrival or warehousing of the goods.

4. SAME—*carrier by water must ordinarily notify consignee before its liability as carrier ceases.* Ordinarily, a carrier by water must notify the consignee of the arrival of goods before its liability as carrier terminates; but this notice may be waived by former course of dealing with the consignee, or by usage prevailing among carriers in the same trade at that port.

5. SAME—*forwarding carrier not liable for misdelivery at destination by agent of connecting line.* The liability of a forwarding carrier ceases upon the safe arrival and warehousing of the goods at their destination, and it is not liable for a subsequent misdelivery of the same by the agent of the connecting line or warehouseman.

6. SAME—*liability of forwarding line is not extended by agent without authority.* The liability of a forwarding carrier, after safely delivering goods at the depot or warehouse of the connecting line at the point of destination, cannot be extended by its agent, in the absence of authority, so as to cover future safe delivery to the consignee.

*Illinois Central Railroad Co.* v. *Carter,* 62 Ill. App. 618, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. GEORGE F. BLANKE, Judge, presiding.

C. V. Gwin, (James Fentress, of counsel,) for appellant:

A railroad company is not liable as a common carrier under its contract beyond its own lines. *Mulligan* v. *Railroad Co.* 36 Iowa, 181.

A bill of lading, like a deed poll and many other classes of contracts, is signed by one party only, and in such case the evidence of assent upon the part of the other party usually consists in his accepting and acting upon it. The evidence of assent derived from his acceptance of the contract without objection is usually conclusive. *Kellman* v. *Express Co.* 3 Kan. 205; *Howe* v. *Navigation Co.* 11 N. Y. 491; *Hopkins* v. *Westcott,* 7 Am. Law Reg. (N. S.) 533; *McMillan* v. *Railroad Co.* 16 Mich. 80, and cases cited.

Common carriers by rail are not required to give notice, and it is the duty of the consignee to be present on the arrival of the goods. *Dispatch Co.* v. *Halleck,* 64 Ill. 284; *Cahn* v. *Railroad Co.* 71 id. 96; *Railroad Co.* v. *Scott,* 42 id. 132.

A carrier by water may show the usage as to the manner of delivery of goods, by those engaged in the carriage of goods by water, in the particular port or at the particular place of delivery, and that he has acted according to it. Hutchinson on Carriers, sec. 366.

Baker & Greeley, for appellee:

Our statute prohibits a common carrier from restricting its common law liability for the carriage of goods by stipulation or limitation expressed in the receipt given for the goods. Rev. Stat. 1874, chap. 27; chap. 114, sec. 33; *Erie Railway Co.* v. *Wilcox,* 84 Ill. 239; *Railway Co.* v. *Jaggerman,* 115 id. 407; *Railway Co.* v. *Montfort,* 60 id. 175; *Railroad Co.* v. *Frankenberg,* 54 id. 88; *Express Co.* v. *Wilson,* 81 id. 339.

Where goods are delivered for carriage to a common carrier marked to a destination beyond the carrier's terminus, the presumption is that the carrier contracts for through carriage. *Gregg* v. *Railroad Co.* 147 Ill. 550; *Railroad Co.* v. *Wilcox.* 84 id. 239.

A bill of lading undelivered at time of shipment is not a contract. *Merchants' Trans. Co.* v. *Furthmann*, 149 Ill. 66.

A common carrier by water is obliged to notify the consignee of arrival of the goods before he can, by warehousing, relieve himself of his responsibility as carrier. *Steamboat Co.* v. *Knapp*, 73 Ill. 506; *Packet Co.* v. *Gattman*, 27 Ill. App. 182; *Zinn* v. *Steamboat Co.* 49 N. Y. 442.

Mr. Justice Wilkin delivered the opinion of the court:

On the 17th of June, 1891, appellee, doing business under the name of Carter, Dinsmore & Co., by his agent, delivered to the Illinois Central Railroad Company, at Chicago, for shipment, 1000 boxes of goods called "combination sets," consisting of bottles of ink, ink stands, etc., valued at about $1.50 each. At the time the goods were so delivered a receipt for them, filled out by the agent of Carter, Dinsmore & Co., was presented to and signed by the railroad company, which is as follows:

"Chicago, *June 17, 1891.*

"Received from Carter, Dinsmore & Co., 275 Kinzie street, on Illinois Central Ry., the following articles in good order, to be delivered in like good order as addressed, without unnecessary delay:

| Marks. | (Original.) | Articles. |
|---|---|---|
| Carter, Dinsmore & Co. | | 1000 boxes ink in glass. |
| St. Paul, Minn. | | Freight guaranteed. |
| (In red.) | | (In red.) |
| No. 28.   Bx.   Stain. | | via Diamond Joe Route. |

"Please send bill of lading in duplicate to Carter, Dinsmore & Co., 275 E. Kinzie street."

On the same day a bill of lading was signed by the company and received by the shipper through the mail a day or two later. It contained a stipulation limiting the liability of the company to losses occurring upon its own line. Carter, Dinsmore & Co. were both consignor and consignee of the goods, which were safely carried to East Dubuque, the terminus of the Illinois Central line, and there delivered to the Diamond Joe line of steam-

boats, and by it carried to .St.. Paul, arriving there on June 27, 1891. Upon their arrival the goods were stored by the steamboat line in its warehouse, to the account of the shipper. The Illinois Central Railroad Company had no depot, freight house or other place for the storage of freight in St. Paul. Nine days after the arrival, the bill of lading, endorsed, "Deliver to C. S. Eaton or to Fred H. Jackson, as per our telegraphic or written instructions, July 6, 1891.—Carter, Dinsmore & Co.," was addressed to "R. J. Williams, Esq., Agent Ill. Cen. R. R.," and received by him in due course of mail. Williams was the only agent of the railroad company at St. Paul, and his authority was limited to soliciting freight for shipment, although the company had furnished him a letter-head in which he was described as "Gen'l N. W. Agent." On the 9th of July the shipper, by letter, directed Williams to deliver 330 of the boxes to Eaton & Jackson, which order he gave to one Brockway, the agent of the Diamond Joe line in charge of the warehouse where they were stored, and Brockway delivered the goods, as directed, to Eaton & Jackson. On July 14 another order was sent to Williams by telegram, directing 100 of the remaining boxes turned over to Eaton and 100 to Jackson, and 200 to be forwarded, consigned to themselves, at places to be designated by Eaton & Jackson. This telegram was likewise turned over by Williams to Brockway, but the latter delivered the whole 400 boxes to Eaton & Jackson, which, it is claimed, they failed to account for, and this suit is to recover from the Illinois Central Railroad Company for the 200 boxes delivered to Eaton & Jackson instead of being forwarded as directed. It also appears that subsequently to the sending of the telegram above mentioned, on August 4, an order was sent to Williams similar to the first, directing 270 of the boxes to be delivered to Eaton & Jackson, which was turned over to Brockway, and the goods delivered as therein directed.

The declaration is in assumpsit, and counts upon a breach of duty on the part of the defendant, as a common carrier, for a failure to deliver the goods according to directions, to which a plea of non-assumpsit was filed, and upon issue joined the cause was tried by a jury, resulting in a verdict and judgment for the plaintiff for $240. That judgment has been affirmed by the Appellate Court, and the case is now brought here for review, a certificate of importance having been granted by the Appellate Court.

The theory of the plaintiff's case is, that the defendant, by its receipt and bill of lading, became liable as a common carrier for the through shipment and safe delivery of the goods at St. Paul, and that such liability still existed when the 200 boxes sued for were delivered to Eaton & Jackson contrary to the order of July 14. That of the defendant is, first, that by the terms of the contract of shipment contained in the bill of lading its liability terminated with the safe delivery of the goods to the Diamond Joe line; and second, if the undertaking was for a through shipment, it discharged its duty and liability by safely carrying the goods to their destination and there placing them in a secure warehouse.

The boxes being marked for shipment to St. Paul when received by the defendant, it was its duty *prima facie* to carry to and deliver them at that place, though beyond its line; and while it had the legal right to limit that liability and refuse to take upon itself the duty of a through carrier by contracting to that effect with the shipper, it could not do so by a mere stipulation in its bill of lading not signed by the shipper, except by assuming the burthen of proof that he accepted the bill of lading consenting to such stipulation. (*Chicago and Northwestern Railway Co.* v. *Simon*, 160 Ill. 648, and cases there cited.) The importance of defining a common carrier's duty where goods are received for shipment marked for a destination to which its own line of carriage does not

extend, was, as shown by the opinion, fully appreciated by this court in *Illinois Central Railroad Co.* v. *Frankenberg*, 54 Ill. 88, and all the authorities bearing upon the question were then carefully considered. Since the rule as above stated was there announced, it has been well understood and uniformly adhered to as the law of this State, and although it has been frequently assailed as not in strict harmony with the decisions of other States adopting what is known as the "English rule," we are not aware that it has been found impracticable or operated unjustly. We are not therefore disposed to modify or change it, though earnestly urged to do so by counsel for defendant. Whether or not the plaintiff did consent to the stipulation was a question for the jury. The correctness of the instructions of the court on this issue is not seriously questioned, and so the finding of the jury and judgment of affirmance in the Appellate Court must be accepted as conclusively settling the fact adversely to the defendant.

It being conceded, then, that it became the duty of the defendant to safely carry and deliver the goods at St. Paul, did that duty continue to exist to the time of the alleged loss? It is well settled that the duty of a railroad company as a common carrier terminates when it has carried the goods to their destination and there placed them in its own safe depot or other warehouse. The cases in this court so holding are cited in *Gregg* v. *Illinois Central Railroad Co.* 147 Ill. 550. Nor is notice to the consignee of the arrival or storage necessary to terminate liability as a carrier, but upon warehousing the liability is at once changed to that of a warehouseman. The court, however, in this case, at the instance of the plaintiff, instructed the jury as follows:

2. "The jury are instructed that if they shall believe, from the evidence, that the 200 boxes of ink were delivered to Eaton & Jackson in violation of the telegraphic instructions of J. W. Carter, the plaintiff, the fact that

at the time of such wrongful delivery said boxes were in the warehouse of the Diamond Joe Line (if the jury shall believe, from the evidence, said boxes were in said warehouse at the time,) will not prevent the plaintiff from recovering, unless the jury further believe, from the evidence, that the plaintiff had notice of and accepted the conditions contained in the bill of lading introduced in evidence."

4. "The jury are instructed that if they shall believe, from the evidence, that a mistake was made in delivering the 200 boxes of ink, and that such mistake was made by the agents of the Diamond Joe Line, an independent common carrier, that nevertheless the defendant, the Illinois Central Railroad Company, is liable to the plaintiff for such wrong delivery unless the jury shall believe, from the evidence, that at the time the said ink was delivered to the defendant to be carried, the defendant, by express stipulation assented to by the plaintiff or his agent, limited its liability to loss occurring on its own line."

The action being against the defendant as a carrier, these instructions are clearly erroneous under the foregoing decisions, unless it can be said that the duty of the defendant was other than that of a common carrier by rail. In other words, if the connecting line which carried the goods to their destination had been a carrier by rail, their safe carriage and storage at St. Paul would have terminated the liability as a carrier, whether the defendant's liability was limited to its own line or not. It is insisted, however, that, the Diamond Joe line being a carrier by water, the liability could only be changed to that of a warehouseman by the storage of the goods upon due notice to the shipper of their arrival. Without determining the question as to whether, under the circumstances of this case, the Illinois Central Railroad Company assumed the liability of a carrier by water, (the agent of the shipper having filled up the receipt for the goods, thereby *prima facie* himself selecting the steamboat line as the

connecting carrier,) we think it clear from all the facts in the case that the instructions above set forth were erroneous. While it is a general rule that a carrier by water is required to give notice of the arrival of the goods to the consignee, it is well settled that such notice may be waived, either by the previous course of dealing between the parties or by the usual course of business of carriers in the same trade in which the carrier is employed at the locality where the goods are landed,—and this whether the usage was known to the shipper or not, the rule being, that every person who contracts with another for services in his particular trade is understood to contract with reference to the usage of the trade. "The carrier may therefore show, as has been repeatedly held, the usage as to the delivery of the goods by those engaged in the carriage of goods by water in the particular port or at the particular place of delivery, and that he has acted according to it." Hutchinson on Carriers, sec. 366, citing *Dixon* v. *Dunham*, 14 Ill. 324; *Farmers and Mechanics' Bank* v. *Champlain Transportation Co.* 23 Vt. 186; *McMaslins* v. *Pennsylvania Railroad Co.* 69 Pa. St. 374; *Turner* v. *Huff*, 46 Ark. 222.

It was shown upon the trial of the case, and not denied, that the disposition of the goods at St. Paul was in strict accordance with the custom and usage of steamboat carriers at that point. We are also of the opinion that it must be inferred from the conduct of the shipper, in the absence of proof to the contrary, that he had actual notice of the arrival of the goods prior to the alleged wrongful delivery to Eaton & Jackson. On the 6th of July he sent a general order to Williams for the future delivery of the goods as "per our telegraphic or written instructions." On the ninth of that month he gave an order for the delivery of 330 boxes to the same parties, whereas the mistake did not occur until after the order of July 14. Certainly, it cannot be said there was no evidence tending to prove a waiver of notice of the arrival of the goods

or of actual notice of that fact, and therefore, in view of the case, it was erroneous to tell the jury, as was done by the instructions of the court, that the defendant was liable as a common carrier, notwithstanding the storage of the goods, unless it was shown that the shipper expressly assented to the limitation of the defendant's liability for loss or damage occurring on its own line.

As to the suggestion that plaintiff's dealings with the goods through Williams strengthens the case against the defendant, we think the opposite effect must be given to those transactions. Those acts were in no proper legal sense dealings with the defendant. Williams was not, in fact, the agent of the Illinois Central Railroad Company for the delivery of goods at St. Paul, and this is not denied. The fact that he appeared, from the letter-heads furnished by the company, to be its general agent in no way influenced plaintiff's conduct, and therefore he is not in a position to insist that he was in any way misled thereby to his prejudice. By his order of July 6 plaintiff undertook to authorize Williams to deliver the goods from time to time as he might direct, and by his subsequent orders of July 9 and 14 and August 4 made him his own agent to transfer the goods. On the theory that it was the duty of the defendant to safely carry and deliver the goods in St. Paul, it was equally the duty of the consignor, who was also the consignee, to receive them upon their arrival. Thus it was said in *Tarbel* v. *Royal Exchange Shipping Co.* 110 N. Y. 170 (6 Am. St. 350): "The duty of the consignee to receive and take the goods is as imperative as the duty of the carrier to deliver. Both obligations are to be reasonably construed, having reference to the circumstances. The stringent liability of the carrier can not be continued at the option or to suit the convenience of the consignee. The latter is bound to act promptly in taking the goods, and if he fails to do so, whatever other duty may rest upon the carrier in respect to the goods, his liability as insurer by such failure terminates." *Red-*

*mon* v. *Liverpool Co.* 46 N. Y. 578; *Hedges* v. *Hudson River Railroad Co.* 49 id. 223.

It would be unreasonable to hold that the shipper could deal with the goods as he claims to have done and still hold the defendant to the strict liability of a common carrier during the indefinite period in which he undertook to leave them in the hands of the carrier for distribution. Even if Williams had been the agent of the defendant for the delivery of the goods, we do not understand that he could thus extend the liability of the defendant by an arrangement with the shipper for their distribution in the future without some evidence showing he had authority to do so. We think the defendant's liability terminated with the safe carriage and warehousing of the property at St. Paul, and that plaintiff must look to the Diamond Joe line, as warehouseman, for any mistake or wrongful disposition of the same by it.

The judgment of the circuit and Appellate Courts will accordingly be reversed, and the case will be remanded to the former court with directions to proceed according to the views herein expressed.

　　　　　　　　　　　　　　　*Reversed and remanded.*