J. Joerg, Defendant in Error, v. The Atchison, Topeka & Santa Fe Railway Company, Plaintiff in Error.

Gen. No. 14,827.

1. STATUTE OF LIMITATIONS—*what not new cause of action.* A change in the form of the action does not constitute the setting up of a new cause of action where the claim is the same, governed and controlled by the same facts.

2. MUNICIPAL COURT—*power to allow amendment.* The Municipal Court is authorized during the trial of a cause to permit the form of the action to be changed.

3. MUNICIPAL COURT—*of what will take judicial notice.* The Municipal Court, as the custodian of the records of a justice of the peace, will take judicial notice thereof.

4. PARTIES—*when assignment does not bar right to sue.* A party who has assigned merchandise but who has not thereby totally divested himself of all interest in such merchandise may sue for the negligent keeping thereof.

5. COMMON CARRIERS—*extent of obligations as warehousemen.* The obligation of a common carrier as a warehouseman is to exercise reasonable care.

6. COMMON CARRIERS—*extent of liability for deterioration of merchandise.* A carrier is only liable for that deterioration resulting from the failure to perform its obligations. Deterioration resulting from natural causes should not be charged against him.

Tort. Error to the Municipal Court of Chicago; the Hon. ARNOLD HEAP, Judge, presiding. Heard in this court at the October term, 1908. Reversed and remanded. Opinion filed December 23, 1909.

Statement by the Court. On May 24, 1903, the plaintiff shipped a carload of eggs from Peabody,

Kansas, to Chicago. By the bill of lading the eggs were consigned to plaintiff, with instructions to notify Lepman & Heggie upon arrival. On May 28, 1903, the car with its load of eggs arrived in Chicago, and upon notification of that fact to Lepman & Heggie they refused to take charge of or receive the eggs. The car on arrival was placed upon defendant's team track and there remained until June 15, 1903, when it was delivered upon the order of an attorney representing the First National Bank of Peabody, the assignee and holder of the bill of lading, to C. H. Weaver & Co. The carload of eggs was delivered upon the first presentation to defendant of the bill of lading, although the attorney endeavored to obtain possession, without a surrender of the bill of lading, at a date prior to delivery. Plaintiff claims that through the negligence of defendant the eggs deteriorated in value while in its custody, and on that claim recovered a judgment of $662, the difference between the value of the eggs in the good condition in which they were when shipped, and their alleged inferior condition at the time of delivery. The suit was in tort, and during the trial changed to contract and an amended statement filed. Defendant offered as evidence the statutes of Kansas limiting the bringing of actions, which, on written contracts, such as a bill of lading, is five years. These statutes the trial court by its ruling excluded. By a transcript of proceedings had before one Max Wolf, at the time of such proceedings a justice of the peace for Cook county, defendant sought to show that it was a garnishee in a certain attachment suit instituted by Lepman & Heggie. This was refused, as also certain testimony that the bill of lading for the eggs was assigned by plaintiff to the First National Bank of Peabody, and that thereby plaintiff had divested himself of all interest in the eggs and the right of action regarding them.

Defendant assigns the various adverse rulings of the trial court above referred to as error, and argues

that they are of such a prejudicial character to its interests as to constitute cause for a reversal of the Municipal Court's judgment.

ROBERT DUNLAP, LEE F. ENGLISH and JAMES L. COLEMAN, for plaintiff in error.

CHARLES A. BUTLER, for defendant in error.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

There is no reason for concluding that the carload of eggs did not arrive in Chicago in good condition, or that the carrier as such had not discharged its duty in carrying the eggs safely to the point of destination. As a matter of fact plaintiff grounds his right of recovery on the negligence of defendant in not properly caring for the eggs between the time of their arrival in Chicago and their delivery to the representative of the Bank, claiming that the duty which the law imposed upon defendant was that not of a carrier, but a warehouseman. Before further discussing and disposing of this, the controlling principle in the case, we will clear up the subsidiary questions raised.

The change in the form of action from tort to contract during the trial was not the statement of a new cause of action. It remained after the amendment the same claim, governed and controlled by the same facts. A recovery could be sustained in either form of action. Section 23 of the Municipal Court Act confers power upon the court to permit of amendments as broad as the one complained about by defendant. The exclusion of the statutes of Kansas, on the limitation of actions, such statutes having no relevancy after the ruling of the trial court permitting the change of the claim from tort to contract, was without error. While the transcript of the proceeding before former justice of the peace Wolf was not evidence, still if such proceedings were relevant, the court, being the custodian of the papers and records of justice of the peace

Wolf, could take judicial notice of such proceedings and receive the same in evidence when proffered as such.

Notwithstanding the assignment by plaintiff of the bill of lading to the Peabody Bank, he was not so divested of all interest in the eggs as to be debarred from maintaining an action for damages to them, chargeable to the negligence of defendant. There is, however, evidence in the record tending to sustain the claim that the $1,550 advanced by the Bank on such assignment was afterwards charged to the account of plaintiff, which, as between the parties, operated to reinvest plaintiff with that title to the eggs with which he parted by the assignment of the bill of lading and receipt from the Bank of the above sum of money. This is not seriously controverted by defendant. Section 197, Hutchinson on Carriers, Vol. 1. An assignment of a bill of lading for advances made upon the freight shipped vests in the assignee a special property in such freight, which ceases upon payment of such advance. So long as the shipper retains any interest in the shipment his right to maintain an action for damages against the common carrier for its negligence in not delivering the goods carried in proper condition at the place of destination is preserved. It is held in Edgerton v. C. R. I. & P. Ry., 240 Ill. 311, that a consignor has such special property in the goods shipped as entitles him to maintain an action of tort or assumpsit against the carrier, either as carrier or warehouseman, to recover damages in respect to the goods carried. G. W. R. R. Co. v. McComas, 33 Ill. 186.

As this case must be remanded for a new trial we refrain from expressing our opinion upon the merits of the case or the ultimate right of plaintiff to recover. However, we judge from the evidence in the record that plaintiff's right to prevail rests upon the liability of defendant as a warehouseman. Indeed the court in its instructions to the jury proceeded upon such theory. When the eggs arrived at Chicago the duty of

defendant, pending their delivery, was to take reasonable care for their protection. The court say in I. C. R. R. Co. v. Carter, 165 Ill. 570: "It is well settled that the duty of a railroad company as a common carrier terminates when it has carried the goods to their destination and there placed them in its own safe depot or other warehouse." Gregg v. I. C. R. R. Co., 147 Ill. 550, and Gratiot v. Railroad Co., 221 *ibid.*, 425, are authority for the doctrine that the carrier's responsibility as such ceases on the arrival of goods at destination, and that of a warehouseman attaches to the carrier until the safe delivery of such goods; and the question of negligence is one.for the jury to determine under instructions accurately stating the law applicable thereto under the proofs. We are of the opinion that the instructions as a whole were calculated to mislead the jury. Some of them proceed upon the liability of defendant as a common carrier, and others as a warehouseman. Instruction 19 stated the law governing defendant's liability accurately, and it was prejudicial and reversible error to refuse to give it to the jury. The instruction reads:

"The jury are instructed that the liability of a railway company, as a common carrier, terminates after a shipment of goods entrusted to it for transportation has been carried to destination, and. if said shipment consisting of a carload of goods has been placed in a reasonably convenient position for unloading by the consignee or by the owner of the goods; and if the jury find from the evidence in this case that the carload of eggs for damages to which the plaintiff sues had been carried safely by the defendant to Chicago, Illinois, and had been there placed on its tracks in a reasonably convenient position for unloading by the consignee, then the defendant thereupon became a warehouseman of said goods, and was bound thereafter to exercise only ordinary care. in the custody thereof. The jury are instructed that ordinary care is such a degree of care as is usually exercised in and about their affairs by men of common prudence and caution in the age and country in which they live; in

other words, ordinary care is such care as a prudent man takes of his own things.''

On another trial this instruction, if requested, must be given.

As to the measure of damages, the jury literally followed instruction No. 1 of the court, stating erroneously the measure of damages by allowing as damages the difference between the value of the eggs at the time of delivery to defendant for carriage and their final delivery at Chicago, to the attorney who presented the bill of lading. The jury evidently assumed that every egg of this shipment would have been in the identical condition when delivered as when shipped but for the negligence of defendant, and imputed to defendant negligence from delay in delivery after arrival, and on this assumption assessed damages. No allowance was made for natural deterioration inherent in goods of the fragile and perishable character of eggs, transported a long distance by rail and detained a number of days by the carrier without its fault. This result was necessarily brought about because the jury was not directed by any instruction given to take into consideration, in assessing damages, loss in value, if any, resulting from natural causes in transit or to delays in delivery not caused by or imputable to defendant. Defendant by the verdict of the jury was made to bear whatever loss may have resulted to the eggs in transit arising naturally from their perishable nature, and delays in delivery of plaintiff's creation. Such is not the fair measure of damages sanctioned by the law.

The judgment of the Municipal Court is reversed and the cause remanded.

*Reversed and remanded.*