PARK NAT. BANK *v.* GOOLSBY *et al.*

(*Knoxville,* September Term, 1942.)

Opinion filed October 2, 1942.

Mitchell Long, of Knoxville, for appellant.

Egerton, McAfee & Clarke and White & Leonard, all of Knoxville, for appellee.

Mr. Justice Prewitt delivered the opinion of the Court.

This cause is before the court on petition for *certiorari* filed by the Parklap National Builders, Inc., seeking to reverse a decree of the Court of Appeals for $2,629.61 and interest against it in favor of the Park National Bank as assignee of James A. Goolsby, a contractor.

The cause presents the question of correctly measuring plaster work under the unit price system. The Bank, as assignee of Goolsby, contends that under the contract, following the custom prevailing in East Tennessee, Goolsby should be paid for the plastering in the spaces occupied by the windows and doors in a building in Kingsport on the ground that this method is that the cost to the plasterer is practically the same with or without openings, since it requires more time to work around an opening than it does to plaster over the entire surface of the wall.

The contract provided that the work, including lathing and plastering, was to be upon the unit price basis of 60 cents for rock lath, 65 cents for celotex, and 85 cents for metal lath work.

It is agreed that if Goolsby's contention and also the Bank's as his assignee are correct, then the amount of the recovery is correctly stated, and if the contention of the petitioner is correct, then Goolsby has been paid in full.

The chancellor found in favor of the Bank and his decree was affirmed by the Court of Appeals.

As stated by petitioner in its brief, the controversy turns on whether there was such a custom as that contended for by the complainants, and, if so, whether it was of such a character as it would presumably be in the minds of the parties at the time the contract was entered into and, accordingly, constituted a part of the contract whether specifically incorporated therein or not.

The proof shows that such was the custom to include the spaces in the unit prices, and the proof further shows that the petitioner was a domesticated corporation, and its president had spent three or four months in Kingsport before the contract was executed.

As to the question of the existence of the custom in East Tennessee as contended by the respondents, the proof establishes such a custom. On this point there is a concurrent finding of the chancellor and the Court of Appeals. Such a concurrent finding is binding on this court. *Tanksley* v. *Tanksley,* 145 Tenn., 468, 239 S. W., 766; *Spofford* v. *Rose,* 145 Tenn., 583, 237 S. W., 68; *Kenner* v. *City National Bank,* 164 Tenn., 119, 46 S. W. (2d), 46.

The next question is whether such a custom is binding on petitioner and constituted a part of the contract, and was, as a matter of law, in the minds of the parties at the time of the execution of the contract.

In *Charles* v. *Carter,* 96 Tenn., 607, 614, 615, 36 S. W., 396, 397, this court quoted from Bishop on Contracts, section 449, as follows: "Proof of custom or usage known to both parties to a contract, either in fact or presumptively from its long continuance, notorious character, or otherwise, if it is not in conflict with the law or its policy, if it is reasonable, and as to the place, business, or person uniform and universal, will be accepted like the general law, not in contradiction of written stipulations, but as explaining what is indistinct in them, and furnishing the rule where they are silent."

The proof shows that this custom to pay for such spaces has existed for more than thirty years in East Tennessee. It appears from the testimony of Mr. Gilbert, another plaster contractor of Knoxville, that Goolsby's bid of 60 cents per square yard was the lowest price

at which he did work of this character without counting out the openings.

In *Sweeney* v. *Thomason,* 77 Tenn. (9 Lea), 359, 42 Am. Rep., 676, the controversy was with respect to the application of a usage or custom in ascertaining the number of bricks in a wall, the contract being "to pay eight dollars per thousand for brick in the wall." The court refused to adopt the custom insisted upon by the brick mason, but said: "If at the time and place the contract was made, the usage and custom in question had become so general and well established as to afford a presumption that it was known to the defendant, and the contract entered into in reference thereto, then it might be sufficient. But the proof of the complainant only is that he has always adopted the rule, and he cannot say that there is any other, or that he knows of no other, and the proof of the other witness is substantially to the same effect."

In the case of *Bryan* v. *Spurgin,* 37 Tenn. (5 Sneed), 681, 683, it was said:

"It seems to be well established, that evidence of a custom, or usage of trade, is admissible, either to interpret the meaning of the language of the contract; or to ascertain the nature and extent of the contract, in the absence of express stipulations, and where the meaning is equivocal or obscure."

It is insisted by petitioner that the above rules of law are not applicable for the reason it is a New York corporation, and, therefore, being a nonresident and having no actual knowledge of the custom which existed in East Tennessee, was not bound by such custom because it was local in its nature.

The record shows that while petitioner is a New York corporation it has been domesticated in this State, and

for all local purposes it has become a domestic corporation.

Fletcher's Cyclopedia of Corporations, Permanent Edition, Vol. 17, section 8310, provides as follows:

"It is the general rule that when a foreign corporation becomes domesticated in a sister state, it becomes, for all local purposes, a domestic corporation of that state, in legal effect, if not in fact, and as such is entitled to the rights, privileges and immunities and is subject to the liabilities of corporations created by that state. By domestication, the corporation subjects itself to the laws of the state applicable to domestic corporations."

Section 4127 of the Code of Tennessee provides:

"When such foreign corporations shall have duly complied with the provisions of the foregoing sections, then it shall be entitled to all the privileges, rights, immunities, and subject to the the liabilities of corporations organized and chartered under the laws of this state."

As above stated, the record shows that the president of petitioner was in Kingsport three or four months before the contract was executed, and it has been held that a principal is bound by the custom prevailing at a place where an agent is to perform some act for the principal, and this is true though the principal had no actual knowledge of the custom.

In *Railroad* v. *Naive*, 112 Tenn., 239, 79 S. W., 124, 64 L. R. A., 443, it was held that a principal is bound by custom at place of his agent, though he has no actual knowledge of it. One who ships goods to his agent at a place where there is an established, certain, notorious, and uniform custom to suspend all business on the fourth day of July is bound by such custom, though he has no actual knowledge of it.

It is insisted that the custom was so local in its nature that it could not be chargeable to the knowledge of the petitioner.

In the case of *Insurance Company* v. *Dobbins & Ewing,* 114 Tenn., 227, 232, 86 S. W., 383, 384, this court said: "We think the testimony is sufficient to show the requisite generality to make the usage good. It is not necessary that it should extend to the whole state. It is sufficient that it is generally recognized and observed by those engaged in the kind of transactions to which it applies within the region where it is claimed to exist, and it is not essential that it be observed in every individual transaction."

We are of opinion that the custom was proven to generally exist in East Tennessee, that petitioner had been domesticated, had its agent in Tennessee and on ground for more than three months before the contract was executed, and petitioner was therefore bound by this custom.

It results that we find no error in the decree of the Court of Appeals and the writ is accordingly denied.