BEATY CHEVROLET, INC., Appellant,

v.

COMPLETE AUTO TRANSIT, INC., Appellee.

Court of Appeals of Tennessee, Eastern Section.

March 6, 1979.

Certiorari Denied by Supreme Court July 2, 1979.

Wilson S. Ritchie, of Ritchie & Norton, Knoxville, for appellant.

Andrew Johnson, of Kramer, Johnson, Rayson, McVeigh & Leake, Knoxville, for appellee.

## OPINION

SANDERS, Judge.

The question involved on this appeal is whether or not a common carrier which makes a delivery of goods to the consignee's premises remains liable as an insurer of the goods until the consignee has had an opportunity to inspect and accept or reject the goods.

The Plaintiff-Appellant, Beaty Chevrolet, Inc., is a Chevrolet dealer in Knoxville. The Defendant-Appellee, Complete Auto Transit, Inc., is a common carrier of automobiles. As pertinent here, the Defendant had a contract with General Motors to transport new automobiles from points in Georgia to points in Tennessee. The Defendant regularly transported automobiles from General Motors in Georgia to the Plaintiff in Knoxville. When vehicles were delivered by the Defendant to the Plaintiff during regular business hours the Plaintiff would inspect the vehicles, sign the waybill and return it to the Defendant's driver. The Plaintiff and Defendant had an agreement that any time the Defendant had an automobile for delivery to the Plaintiff and the Plaintiff was not open for business, the Defendant would unload the vehicle, park it in front of the service entrance to Plaintiff's place of business, lock the car, deposit the keys and waybill in a slot in the service entrance door and continue on its route for the delivery of vehicles to other customers. The slot in the door had been constructed by the Plaintiff for the express purpose of receiving the keys and waybills in this fashion. On the first business day after a delivery was made in this fashion the Plaintiff would inspect the vehicles left on its premises, sign the waybill and mail it to the Defendant.

On June 14, 1975, when the Plaintiff was not open for business the Defendant delivered a new Chevrolet Monte Carlo to the Plaintiff's place of business and complied with the customary procedure. On Monday morning, June 16, when the Plaintiff opened for business the automobile, the keys and the waybill were missing and have never been located.

The Plaintiff was unaware the automobile had been delivered until about 90 days later when it realized it was being charged on its floor plan account. The Plaintiff sued the Defendant for the value of the automobile on the primary theory a proper delivery of the vehicle was never made to the Plaintiff.

The Chancellor found the issues in favor of the Defendant. Plaintiff has appealed and assigned the action of the Court as error.

It is the insistence of the Plaintiff that as a common carrier the Defendant is an insurer of goods from the time of receipt of the goods until they are delivered to the consignee. It further insists that delivery of vehicles made in the fashion in which this one was made was not completed until it had an opportunity to inspect the vehicle and either accept or reject it. Since it never had an opportunity to inspect the vehicle, delivery was never accomplished.

The Plaintiff relies upon the case of *Wayne Knitting Mills v. Delta Motor Lines*, 52 Tenn.App. 164, 372 S.W.2d 419 (1962), where the court said, at 422:

"The general rule is that a common carrier of goods is liable as an insurer for loss or damage to such goods with four general exceptions: (1) That the damages were the result of an act of God; (2) that the damages were the result of an act of the public enemy; (3) that the damages

were the result of an inherent vice or defect in the goods; and (4) that the damages were the result of an act or default on the part of the shipper of the goods. 9 Am.Jur. 813, 'Carriers,' Section 661. A common carrier becomes liable to the shipper for damaged goods by virtue of the contract of carriage and it is not necessary for the shipper to allege or prove negligence of the carrier in order to recover."

■■■ We agree with the Plaintiff the Defendant would be liable for theft or damage of the vehicle after it came into Defendant's possession and prior to delivery. However, we cannot agree with Plaintiff's insistence that delivery had not been accomplished.

While a consignee ordinarily has the right of inspection of goods before accepting the shipment, we have been cited to no authority, nor have we found any, to the effect that a carrier remains liable until an inspection is made after delivery, nor have we found any authority to support the contention that delivery cannot be accomplished without a prior inspection. It had been a long-standing custom between the Plaintiff and Defendant for vehicles to be delivered after working hours in the same manner this vehicle was delivered and we hold the Plaintiff will not now be heard to complain.

The Appellee has ably treated the subject of custom and usage between carrier and assignee in its brief, from which we quote. In discussing the case of *Pennsylvania Railway Co. v. Naive*, 112 Tenn. 239, 79 S.W. 124, which is cited by Appellant in its brief, the Appellee said:

"The Court, in discussing the matter of usage and custom and the effect thereof, said at page 251 [, 79 S.W. 124] of the official report in the *Naive* case:

" 'This principle is illustrated by the following cases: In *Illinois C. R. Co. v. Carter*, 165 Ill., 570, 46 N.E., 374, 36 L.R.A., 527, speaking of a custom prevailing at a particular port to waive the rule requiring carriers by water to give notice of the arrival of the goods to the consignee, the court said: "While it is a general rule that a carrier by water is required to give notice of the arrival of the goods to the consignee, it is well settled that such notice may be waived, either by the previous course of dealing between the parties, or by the usual course of business of carriers in the same trade in which the carrier is employed at the locality where the goods are landed, and this whether the usage was known to the shipper or not; the rule being that any person who contracts with another for services in his particular trade is understood to contract with reference to the usage of the trade. The carrier may therefore show, as has been repeatedly held, the usage as to the delivery of the goods by those engaged in the carriage of goods by water in the particular port or at the particular place of delivery, and that he has acted according to it." '

"And at page 254 [, 79 S.W. 124]:

" 'Indeed, the rule is general that in all contracts as to the subject-matter of which known usages prevail, the parties are held to have proceeded on the tacit assumption of such usages, and to have contracted in reference to them, unless the contrary appears, and the usages form a part of the contract.'

"And at page 260 [, 79 S.W. 124]:

" 'It was held in a Pennsylvania case that the rule that a carrier must give notice to the consignee of the arrival of goods at destination is subject to exceptions growing out of special circumstances, and out of customs that have grown up for the mutual advantage of shipper and carrier. [Allam] v. Pa. R. Co., 183 Pa., 174, 38 A., 709, 39 L.R.A., 535.'

"The case of *J. H. Dean et al. v. Vaccaro & Co.*, 39 Tenn. 488, which also is cited by the appellant, recognized this same principle, saying at page 490:

" 'When there is a contract for any particular mode of delivery, that will, of course, govern.'

"Appellant cites the case of *Park Nat. Bank v. Goolsby et al.*, 179 Tenn. 194, 164 S.W.2d 545. That case was an action to

recover for plastering work performed by a contractor. There was a question as to the correct way of measuring the plaster work that had been performed and there was a question as to whether the prevailing custom in East Tennessee was controlling. After finding that there was an established custom in the area, the Court said, at page 197, [164 S.W.2d 124]:

> " 'The next question is whether such a custom is binding on petitioner and constituted a part of the contract, and was, as a matter of law, in the minds of the parties at the time of the execution of the contract.
>
> " 'In *Charles v. Carter*, 96 Tenn., 607, 614, 615, 36 S.W., 396, 397, this court quoted from Bishop on Contracts, section 449, as follows: "Proof of custom or usage known to both parties to a contract, either in fact or presumptively from its long continuance, notorious character, or otherwise, if it is not in conflict with the law or its policy, if it is reasonable, and as to the place, business, or person uniform and universal, will be accepted like the general law, not in contradiction of written stipulations, but as explaining what is indistinct in them, and furnishing the rule where they are silent." ' "

\* \* \* \* \* \*

"The effect of custom or usage in the delivery of goods by a carrier is stated in 13 Am.Jur.2d, *Carriers*, § 407, as follows:

> " 'Delivery of goods by a common carrier may be governed by custom or usage which is not contrary to specific terms of the contract of transportation, or established rules of law. Accordingly, where the mode of delivery is not specified in the contract of carriage, a delivery by the carrier is sufficient which conforms to the custom of the place of destination, provided such custom has been so long acquiesced in as to be deemed to form a part of the contract.' "

When Defendant's driver parked that automobile in front of the service door and locked it, then placed the keys and waybill in the designated slot the Defendant had surrendered all dominion and control over the vehicle. It had delivered the vehicle at the point designated by the Plaintiff and the delivery was as complete as if the keys and waybill had been placed in the hands of Plaintiff's employee.

We concur with the findings and conclusions reached by the Chancellor. The assignments of error are overruled. The decree of the Chancellor is affirmed and the cost of this appeal is taxed to the Appellant.

PARROTT, P. J., and FRANKS, J., concur.