DAVIS & CO. AUTO PARTS,
INC., Plaintiff,

v.

ALLIED CORPORATION, Defendant.

No. 86 Civ. 8893(SWK).

United States District Court,
S.D. New York.

Dec. 22, 1986.

Becker, Goldstein & Graff by Michael P. Graff, New York City, for plaintiff.

Rivkin, Radler, Dunne & Bayh, by Stewart C. Fink, Uniondale, N.Y., for defendant.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Plaintiff, Davis & Co. Auto Parts, Inc. ("Davis"), remanufactures and distributes rebuilt brake products for the automotive "aftermarket", which is the market for replacement parts. Davis also maintains a retail store in the South Bronx from which it sells aftermarket automobile parts to the general public. Plaintiff contends that the remanufacturing and distribution of rebuilt brake products makes up about seventy percent of its business, and its sales from its retail store make up the other thirty percent.

Defendant, Allied Corporation ("Allied"), is a corporation engaged in the manufac-ture and sale of a wide variety of products, including supplies for the automotive aftermarket. The subdivision of the defendant involved in this case is the Allied Aftermarket Division, which now includes what was previously the Bendix Corporation. The Allied Aftermarket Division manufactures and sells precut and presized linings for use in the manufacture of rebuilt brake products.

Davis has done business with the Bendix Corporation, or its corporate successor, for the past thirty years. According to the current contract, entered into on September 24, 1985, Bendix supplies Davis with precut and presized linings and Davis sells the remanufactured brakes in a box labeled "using Bendix products". On October 9, 1986, the Allied Aftermarket Division informed Davis that the contract between the two companies was terminated effective November 15, 1986. The Allied Aftermarket Division's termination notice provided that Davis could place its final order—not to exceed customary monthly orders—by that date.

Davis brings four claims against Allied. It alleges Allied (1) engaged in unlawful monopolization and an unlawful attempt to monopolize, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2; (2) engaged in unfair competition; (3) committed prima facie tort; and (4) breached its contract.

Plaintiff seeks a preliminary injunction restraining Allied from (1) refusing to deal with Davis, (2) discontinuing regular monthly shipments to Davis of the full line of precut and presized friction linings and other related materials necessary for and relating to the remanufacture of automotive brake shoes and disc brake pads used on passenger cars and light and medium trucks, and (3) in any way interfering with or limiting Davis' ability regularly to purchase from Allied the full range of such linings which Davis has customarily purchased from Allied in the past or to continue remanufacturing and distributing a sufficient and well-balanced inventory of remanufactured brake shoes and pads from the Bendix line. In response, defendant

moves for summary judgment on each of plaintiff's claims.

This Court held an evidentiary hearing on December 1–2, 1986. The Court heard testimony from Rafel Katz, President and co-owner of Davis, Placido Buda, President of Bonded Brakes, Inc., Christopher Jones, an employee of the Allied Aftermarket Division, and Ronald Miskelley, Product Manager for friction products in the Allied Aftermarket Division. The Court also received pleadings, affidavits, and exhibits from both parties.

On December 2, 1986, the Court granted a temporary restraining order in plaintiff's behalf. On December 11, 1986 the Court extended the temporary restraining order through December 21, 1986 in order to maintain the status quo pending disposition of plaintiff's motion for preliminary injunction.

## I. PRELIMINARY INJUNCTION

In order to obtain a preliminary injunction in this Circuit, a plaintiff must demonstrate both (a) irreparable harm, and (b) either (1) a likelihood of success on the merits, or (2) sufficiently serious questions going to the merits to make them fair grounds for litigation *and* a balance of hardships tipping decidedly in its favor. *In re Feit & Drexler, Inc.*, 760 F.2d 406, 415 (2d Cir.1985); *Kaplan v. Board of Education of the City School District of the City of New York*, 759 F.2d 256, 259 (2d Cir.1985).

*Merits*

*Antitrust Claim*

■ To prove a monopoly under § 2 of the Sherman Act, a plaintiff must show two elements: (1) the possession of monopoly power in the relevant market, and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident. *United States v. Grinnell Corp.*, 384 U.S. 563, 570–571, 86 S.Ct. 1698, 1703–1704, 16 L.Ed.2d 778 (1966); *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 105 S.Ct. 2847, 2854, 86 L.Ed.2d 467 (1985).

■ If Allied has a monopoly, its refusal to deal with Davis in this case could constitute a violation of the Sherman Act's prohibition of the "willful acquisition or maintenance" of monopoly power. In *Aspen Skiing* the Supreme Court held with regard to monopolists, "The high value that we have placed on the right to refuse to deal with other firms does not mean that the right is unqualified." 105 S.Ct. at 2856–57. In that case the Court affirmed the lower courts' findings that a monopolist's decision to "make an important change in a pattern of distribution that had originated in a competitive market and persisted for several years" resulted in a violation of § 2 of the Sherman Act. *Id.* at 2858. Intent is the distinguishing factor between lawful and unlawful refusals to deal; where a monopolist's acts reveal the purpose to create or maintain a monopoly its conduct is unlawful. *See Id.* at 2857.

■ The existence of monopoly power is determined by evaluating a number of economic indicia, the most important of which is the percentage of the total market held by the defendant. *See e.g., American Tobacco Co. v. United States*, 328 U.S. 781, 813–814, 66 S.Ct. 1125, 1140–1141, 90 L.Ed. 1575 (1946) (adopting the position of the Second Circuit in *United States v. Aluminum Co. of America*, 148 F.2d 416, 424 (2d Cir.1945)); *Byars v. Bluff City News Co. Inc.*, 609 F.2d 843, 850 (6th Cir.1979). In order to determine the total market, the Court must define the appropriate product and geographic markets.

Goods are in the same relevant product market if they are "reasonabl[y] interchangeab[le] for the purposes for which they are produced—price, use, and qualities considered". *Nifty Foods Corp. v. Great Atlantic and Pacific Tea Co.*, 614 F.2d 832, 840 (2d Cir.1980) (quoting *United States v. E.I. DuPont de Nemours & Co.*, 351 U.S. 377, 381, 76 S.Ct. 994, 999, 100 L.Ed. 1264 (1956)) Where a brand name contributes to a slight difference in price between products which are otherwise essentially the

same, the Second Circuit has held that the products are in the same market. *Id.* at 840 (citing *Brown Shoe Co. v. United States,* 370 U.S. 294, 325–26, 82 S.Ct. 1502, 1523–1524, 8 L.Ed.2d 510 (1962)).

The evidence presently before this Court relates to four automotive products: new brake shoes, rebuilt brake shoes, new brake pads, and rebuilt brake pads. New and rebuilt shoes, as well as new and rebuilt pads are reasonably interchangeable with each other, although shoes and pads are not interchangeable. Buda's testimony indicates that Bendix lined products do command a higher price—approximately twenty percent higher—than most other brake products. In addition, Katz' testimony indicates that new shoes and pads command a substantially higher price than their rebuilt counterparts. Consumers pay only between two dollars and eight dollars for a set of rebuilt shoes, but will pay between twenty-five dollars and thirty dollars for a set of new shoes. With regard to pads, Katz' testimony indicates that the vast majority of disc pads manufactured are new and that the market for rebuilt pads is virtually nonexistent.

■ On this basis, this Court finds that the markets for new and rebuilt automotive products are two distinct markets whose quality differs so greatly that they exist in completely separate price categories; the markets for pads and shoes are submarkets within these markets. The Court, based on this Circuit's holding in *Nifty,* declines to differentiate a market or submarket of Bendix lined parts.

■ Geographic market is defined by the "area of effective competition" in which competitors are willing to compete for the consumer potential. *Tampa Electric Company v. Nashville Coal Co.,* 365 U.S. 320, 327–29, 81 S.Ct. 623, 627–29, 5 L.Ed.2d 580 (1961); *United States v. Philadelphia National Bank,* 374 U.S. 321, 83 S.Ct. 1715,

10 L.Ed.2d 915 (1963). In determining geographic markets, courts consider various economic indicia including price, sales patterns, customer convenience, and preference.

The record in this case is virtually devoid of evidence relevant to this determination. Allied proffered evidence, in the form of sworn testimony and exhibits, in support of its contention that the relevant market is national,[1] and that Allied's share of that market is 14.9 percent.[2] Plaintiff's only evidence relevant to this determination is Mr. Katz' sworn testimony that a smaller, regional market exists of which Allied's share is eighty to ninety percent. Upon cross-examination, Mr. Katz was unable to consistently define the contours of this regional market, and plaintiff has proffered no further evidence in support of any such definition.

■ Plaintiff's conclusory allegations regarding the existence of a regional market and Allied's substantial share in it are not sufficient to meet its burden of demonstrating to this Court either a likelihood of success on the merits of its antitrust claim or sufficiently serious questions going to the merits to make it fair grounds for litigation. "[C]areful definitions and proof (defining a market) are indispensable in antitrust actions" and it is plaintiff's burden to come forward with this proof in order to demonstrate the merits of its case in an action for preliminary injunction. *Walker v. Providence Journal Company,* 493 F.2d 82, 87 (1st Cir.1974).

Because Davis has not sustained its burden of proffering testimony relevant to this Court's determination that Allied has monopoly power, the Court declines to reach the issue of Allied's willful acquisition or maintenance of its alleged monopoly.

### State Claims

#### Unfair competition

Davis' claim that Allied engaged in unfair competition is based on the notion that

---

**1.** Jones, for example, testified that Allied's market analyses are conducted on the basis of a national market.

**2.** It should be noted that this percentage was arrived at by using a product market which includes new and rebuilt shoes and pads—a market substantially broader than that which has been defined by this Court.

the only finding necessary is that the defendant's action was "commercially immoral". When faced with a similar claim, this Circuit stated, "New York law in this area (of unfair competition) is indeed flexible, but it is not that flexible." *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir.1980) (Newman, J.).

■ Under New York law, in order to sustain a claim for unfair competition, plaintiff must show that defendant misappropriated plaintiff's labors or expenditures, and that defendant displayed some element of bad faith in doing so. *Id.*

■ Plaintiff has not met this burden. Plaintiff alleges only that Allied is attempting to "appropriate for itself the goodwill they developed together". Under New York unfair competition law, defendant misappropriates plaintiff's goodwill when it sells its product through misleading the public into thinking that the product is sponsored by or derived from plaintiff or plaintiff's product. *American Footwear Corp. v. General Footwear Co.*, 609 F.2d 655, 662 (2d Cir.1979). Davis has not asserted or proffered any evidence that Allied is attempting to capitalize on Davis' name and/or reputation in the automotive parts industry.

### Prima facie tort

■ To establish a prima facie tort, plaintiff must show (1) the infliction of intentional harm (2) resulting in damages (3) without excuse or justification (4) by acts or a series of acts that would otherwise be lawful. *Crimpers Promotions, Inc. v. Home Box Office, Inc.*, 554 F.Supp. 838, 849 (S.D.N.Y.1982) *aff'd*, 724 F.2d 290 (2d Cir.1983), *cert. denied*, 467 U.S. 1252, 104 S.Ct. 3536, 82 L.Ed.2d 841 (1984). Plaintiff must show that defendant's conduct was prompted by malicious motive unmixed with any other. *Id.* If plaintiff shows only that defendant's actions were motivated partly by malice and partly by defendant's own pecuniary interests, plain-

tiff will not recover under a prima facie tort theory. *Filmway Pictures, Inc. v. Marks Polarized Corp.*, 552 F.Supp. 863, 867 (S.D.N.Y.1982).

■ The evidence presently before this Court does not support Davis' prima facie tort claim. Davis claims that Allied has intentionally and unjustifiably undertaken to put it out of business. In support of this contention, Davis proffered testimony supporting its unblemished reputation with Allied prior to the termination; Davis, for example, received a service award from Allied in 1984. Davis offers no evidence of intentional wrongdoing. Allied, however, has proffered evidence, in the form of testimony and affidavits, that its decision to terminate Davis is part of its legitimate business decision to reorganize its automotive brake business.

### Breach of contract

■ The most recent contract between the two parties, admitted as an exhibit before this Court, provides for termination upon thirty days notice. Although Allied complied with this provision, Davis contends that the termination nevertheless constitutes breach of contract because "[t]hirty years of usage and custom preclude termination of the contract between Allied and Davis except for cause. Allied has never asserted that it has cause to terminate, and it in fact lacks such cause."

Under both New York and Tennessee law [3] the express terms of the contract control in this case, and evidence of custom and usage would be admitted only to prove additional terms not inconsistent with the written terms. *See Bellefonte Re Insurance Co. v. Argonaut Insurance Co.*, 757 F.2d 523, 528 (2d Cir.1985); *Beaty Chevrolet, Inc. v. Complete Auto Transit, Inc.*, 586 S.W.2d 122, 125 (Tenn.Ct.App.1979).

Plaintiff has not demonstrated either a likelihood of success on the merits of its state claims or sufficiently serious ques-

---

3. Paragraph 11 of the contract states that the laws of the State of Tennessee are to govern the interpretation and construction of the contract.

tions going to the merits to make them fair grounds for litigation. As stated above, plaintiff has not met this burden with regard to its antitrust claim either. The Court thus will not reach the issues of irreparable harm or balance of hardships. Plaintiff's motion for preliminary injunction is DENIED.

## II. SUMMARY JUDGMENT

The Court defers ruling on defendant's motion for summary judgment on each of plaintiff's claims until plaintiff has had a full and fair opportunity to respond to this motion. Such response will be received by this Court not later than January 16, 1987.

SO ORDERED.