BLACK *et al. v.* STATE, *ex rel.* DISTRICT ATTORNEY-GENERAL.

*(Knoxville.* September Term, 1914.)

1. **INTOXICATING LIQUORS.** Nuisance. Temporary injunction. Statutory injunction.

In a suit to abate an alleged liquor nuisance, under Acts 2d Ex. Sess. 1913, ch. 2, a temporary injunction, issued without five days' notice to defendants, as required therein, is erroneous, but not void. (*Post, p.* 532.)

Acts cited and construed: Acts 1913, ch. 2, sec. 6.

Case cited and approved: State v. Ragghianti, 129 Tenn., 560.

2. **INTOXICATING LIQUORS.** Abatement of nuisance. Appeal. Findings. Conclusiveness.

On appeal to the court of civil appeals from a judgment of the circuit court, under Nuisance Act (Acts 2d Ex. Sess. 1913, ch. 2), sec. 5, providing that proceedings on appeal under the act shall be the same as in courts of chancery, the court of civil appeals should find the facts from the preponderance of the evidence, independent of the findings of the circuit court. (*Post, pp.* 532, 533.)

Acts cited and distinguished: Acts 1913, ch. 2, sec. 5.

3. **CERTIORARI.** Findings. Conclusiveness.

The supreme court on *certiorari* will not review a finding of fact, concurred in by the trial judge and court of civil appeals, if there is any evidence to support it. (*Post, p.* 533.)

Case cited and approved: State ex rel. v. Lee, 124 Tenn., 385.

4. **INTOXICATING LIQUORS.** Nuisance. Findings. Sufficiency of evidence.

In a suit to abate a liquor nuisance, under Acts 2d Ex. Sess. 1913, ch. 2, evidence *held* not to sustain a finding against the owner

130 Tenn. 34

of the building, on the theory that the nuisance, which was caused by the acts of a subtenant, had not been discontinued in good faith before suit was begun. (*Post, pp.* 533-539.)

Cases cited and approved: Sharp v. Arnold, 108 Iowa, 203; Shear v. Brinkman, 72 Iowa, 698; Merryfield v. Swift, 103 Iowa, 167; Miller v. State, 3 Ohio St., 475.

## FROM KNOX.

Appeal from the Circuit Court of Knox County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.— Von A. Huffaker, Judge.

Frank M. Thompson, attorney-general, for the State.

Pickle, Turner & Kennerly and J. W. Culton, for defendant.

Mr. Justice Faw delivered the opinion of the Court.

This is a suit by the State, on relation of the district attorney general, brought by petition in the circuit court of Knox county, against W. P. Black and S. G. Heiskell, to abate an alleged liquor nuisance. The petition was filed at 5 o'clock in the afternoon of May 4, 1914, and averred that W. P. Black was engaged in the unlawful sale of intoxicating liquors, and was conducting such unlawful business in a building belonging to S. G. Heiskell at No. 112 South Central

street, in the city of Knoxville, and that said unlawful business was a public nuisance. Separate answers were filed by the defendants, denying the material averments of the petition, and defendant Heiskell, in his answer, set up certain facts relative to his connection with the property described in the petition during the time in question, which will appear later in the statement of certain parts of the evidence bearing on his defense.

A temporary injunction was granted at the time the petition was filed on an *ex parte* application and without notice to the defendants. Later and after answers were filed, the cause was heard by the circuit court upon the pleadings and proof offered by both parties, and that court adjudged and decreed that the averments of the petition were sustained, and awarded injunctions against the defendants, respectively, in accordance with the provisions of section 6 of chapter 2, Acts Extra Session 1913, commonly known as the "Nuisance Act." The decree of the circuit court contained no order of abatement—that is to say—no order directing the removal from the building in question of fixtures, supplies, and instrumentalities used for the purpose of conducting such unlawful business as that described in the petition; and the reason for this omission will be apparent when we come to an examination of certain phases of the evidence. Defendant Black did not appeal from the decree of the circuit court. Defendant Heiskell appealed to the court of civil appeals, and that court affirmed the

decree of the circuit court.  A writ of *certiorari* hav-
ing been heretofore granted by a member of this court,
the case is before us on assignments of error filed on
behalf of Mr. Heiskell, and we will state our conclu-
sions upon the questions which we regard as proper
and necessary to be passed upon in order to a deter-
mination of the case.

1.  A temporary injunction should not have issued
without five days' notice to the defendants; but such
an injunction, issued without notice, was merely er-
roneous as a matter of procedure, and was not void,
or in excess of jurisdiction, and a violation would
have been punishable as a contempt.  *State* v. *Rag-
ghianti,* 129 Tenn., 560, 167 S. W., 689.

2.  The court of civil appeals held that this is a
law case, tried before the circuit judge without the
intervention of a jury, and applied the rule that, where
there is any material evidence to support the findings
of a circuit judge upon material questions of fact,
his findings of fact will not be disturbed.  This was
error, because section 5 of the Nuisance Act (chapter
2 of Second Extra Session 1913) provides:

"That proceedings under this act, whether in the
chancery, circuit, or criminal courts, shall be conducted
in accordance with the procedure of courts of chan-
cery where not otherwise expressly provided herein;
and all of said courts having cognizance of such pro-
ceedings are hereby given the full jurisdiction and
powers of courts of equity with respect to such pro-
ceedings."

It must follow, as a logical sequence from the above-quoted provisions of the statute, that the appellate courts, in reviewing this case, will be governed by the rules applicable to appeals from the chancery court. The court of civil appeals was not precluded, therefore, from finding the facts of the case from the preponderance of the evidence, without reference to the findings of the circuit judge.

But it results from this holding that any issue of fact upon which there is a concurrent finding by the trial judge and the court of civil appeals is settled and determined, and this court will not go behind that finding if there is any evidence to support it. *State, ex rel.,* v. *Lee,* 124 Tenn., 385, 136 S. W., 997.

3. The question is made by an assignment of error that no injunction, under the facts of this case, lies against petitioner Heiskell, or his property in question, because at the institution of this suit the alleged nuisance charged to said Black did not exist; it having previously been abated by Black's vacation and removal from said premises.

In response to the question made under this assignment of error, the court of civil appeals said in its opinion, viz.:

"The only question that remains is whether the defendant Black had, in good faith, vacated the premises before the petition was filed, and had turned the premises over to his codefendant Heiskell.

"We are of opinion that there was evidence tending to show that the premises were being occupied by

Black at the time of the filing of the petition. While it does not expressly appear, the inference can be properly drawn from the evidence that the defendant Heiskell did not undertake to have Black vacate the premises in question until just before the petition was actually filed, and until after the same had been prepared, or was in course of preparation, by the district attorney.

"While it does not expressly appear from the evidence that the defendant Heiskell had gained knowledge or information that the petition was about to be filed against him, we think it may be inferred from the evidence that he did have either knowledge or information that the petition was about to be filed, and that it was then, and not until then, that he made an effort to get Black out of the premises; and, this being true, we do not think that he could permit Black to remain in the premises until the very day of the filing of the petition, and up to within three or four hours before the petition was in fact filed, before making any effort to have the premises vacated and said unlawful business stopped, and now make the defense that said nuisance did not exist at the time of the actual filing of the petition, and escape the operation of the injunction.

"However, we think there is material evidence in the record tending to show that Black had not vacated the premises, even at the time the injunction was served, which was after it had been served on Mr.

Heiskell, and, in all probability, a day or two after it had been served on Mr. Heiskell.

"We think the same rule may properly be applied to this case as to any other law case tried before the circuit judge without the intervention of a jury; and that is, that if there is any material evidence to support the findings of the circuit judge upon material questions of fact, his findings will not be disturbed, and the judgment will not be reversed, except for errors of law."

It is manifest from the foregoing quotation that there is no concurrent finding of the circuit judge and the court of civil appeals in respect of the questions as to whether the alleged nuisance actually existed at the time the petition in this case was filed, or had previously been abated by Black's removal from the premises. It is seen from the excerpt quoted from the opinion of the court of civil appeals above that it was held by that court that there was material evidence in the record *tending to show* that Black had not vacated the premises in question at the time the petition was filed, and, without undertaking to determine the weight or preponderance of the evidence, the court held on this point that the finding of the circuit judge would not be disturbed, because there was some material evidence to support it.

It is necessary, therefore, for this court to determine from the evidence in the record whether the alleged liquor nuisance existed in the said building of petitioner Heiskell, at No. 112 South Central street,

in the city of Knoxville, at the time the petition in this case was filed in the circuit court; because the "Nuisance Act," under which this suit is brought, is not designed to punish a defendant for offenses previously committed, but to abate *nuisances existing at the time the action is commenced,* and to enjoin the further continuance of such existing nuisances. The statute does not authorize the courts to interfere with the use by the owner of his property, and tax him with costs, unless it be necessary to do so in order to abate an *existing* nuisance. *Sharp* v. *Arnold,* 108 Iowa, 203, 78 N. W., 819; *Shear* v. *Brinkman,* 72 Iowa, 698, 34 N. W., 483; *Merryfield* v. *Swift,* 103 Iowa, 167, 72 N. W., 444; *Miller* v. *State,* 3 Ohio St., 475, 488.

We do not wish to be understood as holding that, in order to warrant an injunction against the owner of the property, sales must be shown up to the date of the action to enjoin. If it should appear from the proof in a case of this character that there had been a liquor nuisance in the building, and that, recently before the filing of a petition for injunction to abate same, the business was suspended, and was not in operation at the time the petition was actually filed, but it should also appear from the proof that the claim of voluntary abatement of the nuisance was merely colorable, and a mere pretext to escape the consequences of an impending prosecution, the defense would not avail.

In the present case we find from the testimony of S. G. Heiskell and James A. Gleason that Mr. Heis-

kell was the owner of the building at No. 112 South Central street at the time of the transactions involved in this case; that Mr. Heiskell leased the lower floor of said building to James A. Gleason by written lease, copied into the record, for one year ending April 25, 1914, and Mr. Gleason paid Mr. Heiskell the stipulated rent of $200 for the year; that at the time the lease expired on April 25, 1914, defendant Black was occupying the premises under a rental contract with Gleason, which terminated at the expiration of Gleason's lease from Heiskell on April 25th; that Gleason communicated with Heiskell on April 25th, and said to him that Black owed him (Gleason) some back rent, and asked Heiskell to permit Black to remain in the building a day or two longer, until he (Gleason) could collect said rent, to which Heiskell agreed; that Black paid said back rent to Gleason on April 26th or 27th, and Gleason, on one of those days, notified Heiskell of that fact, and that the building was at his (Heiskell's) disposal; that Heiskell thereupon entered into negotiations with other parties for a lease to them of the building; that Black did not remove his goods and fixtures from the building until May 4th, but he remained during that time without any contract with Heiskell, and without paying any rent to Heiskell; that Black moved his stock and fixtures out of said house on the morning of May 4, 1914, and on that day, about 2 o'clock in the afternoon, delivered the key and surrendered possession of the building to

Heiskell, and that about three or four hours there-
after the bill in this case was filed.

It is argued on behalf of the appellee that there is
evidence in the record that Black was still occupying
the property on May 5th, the day after the petition
was filed in the circuit court; but we do not think that
the testimony upon which this contention is predicated
supports it.

A. L. Wells, a deputy sheriff, testified, viz.:

"I do not know who occupied the upstairs of that
building; I don't know who the party is. When I
served the papers in this case on Mr. Black, I found
him upstairs at the head of the steps. There was no
one with him. I was looking for him. . . . I had
been looking for him some time, and Mr. Black stuck
his head out over the edge of the porch and called
me up stairs."

The lease by Mr. Heiskell to Gleason did not include
any part of the building except the lower floor, and
there is no proof that Black had at any time occupied
any part of the building except the lower floor. It is
shown in the record that the upper floor had been
rented to another party or parties for a rooming house,
so that the mere fact that Black was in the hallway
upstairs, which was reached by a stairway discon-
nected from the rooms below formerly occupied by
Black, would not, in our opinion, tend to weaken the
testimony of Heiskell, Gleason, and Black that Black
had removed from the building and had delivered
the key and complete possession thereof to Heiskell at

or before 2 o'clock on the afternoon of May 4th. The fact, that Black delivered the key to Heiskell only about three hours before the petition was filed might have more weight as a circumstance tending to cast suspicion upon the good faith of Mr. Heiskell but for the fact that Mr. Heiskell's testimony shows, without contradiction, that there was no agreement or understanding on his part that Black was to remain in the building after Gleason's lease expired, but that it was his understanding that Black was to move out at once and that he, Heiskell, with that understanding in mind, *was conducting negotiations with other parties looking to a lease to such other parties of that part of the building then occupied by Black.*

It results that the decree of the court of civil appeals and the decree of the circuit court against S. G. Heiskell must be reversed, and the petition, in so far as it seeks relief against him, will be dismissed. The costs of the appeal and the costs accrued in the circuit court in the prosecution of the cause against S. G. Heiskell will be paid by the State, when duly certified to the comptroller for payment in the manner required by law.