TENNESSEE RAILWAY CO. v.'RIDDLE COAL CO.

Eastern Section.   July 25, 1925.

No ˙petition for Certiorari was filed.

1. **Appeal and error.  The weight of the evidence is for the jury and will not be reviewed by the appellate court.**
The appellate court can only review the evidence to see whether or not there is any material evidence to support the judgment, and an assignment of error that the evidence preponderates against the judgment presents nothing for review.

2. **Carriers.  Burden is on the carrier to show loss of coal result of shipper's careless loading.**
In an action by coal company against railroad for loss of coal by loosening of hopper bottom of car, the burden is on the railroad. to show that the loss   was the result of shipper's loading and not caused by negligence of carrier.

3. **Carriers.  Liability presumed to be that of common law.**
In absence of proof to the contrary, carrier's liability is always presumed to be its common liability as insurer, and any party attempting to show greater or less liability must assume burden of proving contract by which common-law liability was affected.

4. **Carriers.  Where shipper made a prima facie case showing proper loading and loss, burden was then on carrier to show freedom from negligence.**
In an action to recover from carrier for loss of coal in transit where the shipper makes a prima facie case showing proper loading and loss, the burden then shifts to carrier to show loss was not due to its negligence and was due to improper loading.  There is no burden on plaintiff to show negligence of carrier or that loss was not due.to improper loading.

5. **Carriers.  Evidence held to sustain verdict for plaintiff.**
In action by shipper of coal against carrier for loss of coal, evidence as to proper loading and fastening of car, and that hopper bottom came loose after being hauled three miles, held to warrant finding for plaintiff.

Appeal in Error from Circuit Court, Scott County; Hon. W. H. Buttram, Judge.

Chas. H. Davis, of Oneida, and H. G. Fowler, of Knoxville, for Tennessee R. Co.

O. C. Conaster, of Huntsville, for Riddle Coal Co.

THOMPSON, J.   On February 16, 1924, the Riddle Coal Company, which operates a coal mine at Fogle Tenn.,'loaded a hopper bottomed coal car (Southern Railway car No. 97686) with coal and turned the same over to the Tennessee Railway Company for transportation. When the car had gone about three miles from the mine, the bottom came loose and a considerable portion of the coal fell out.

The Riddle Coal Company sued the Tennessee Railway Company to recover for the coal, and the justice of the peace, before whom the suit was brought, rendered a judgment against the Tennessee Railway Company, for the sum of $105.39, from which judgment the railway company appealed to the circuit court.

The case was tried in the circuit court on November 15, 1924, by the court without the intervention of a jury, and a judgment was rendered in favor of the Riddle Coal Company for the sum of $105,39. From this judgment, its motion for a new trial having been overruled, the Tennessee Railway Company has appealed to this court, and assigned error as follows:

"Assignments of Error.

"(1)   The evidence preponderates against the judgment of the court.

"(a)   In that the Riddle Coal Company (plaintiff) undertook to load the car, and failed to take the necessary precautions in securing the doors of the car.

"(b)   In that the loss of the coal complained of was due to improper loading of the car.

"(2)   No negligence on the part of the defendant was shown in supplying a good and sufficient car or in accepting said car for transportation."

The first assignment of error makes the question that the evidence preponderates against the judgment, and we cannot consider this assignment for the reason that we can only review the evidence to see whether or not there is any material evidence to support the judgment. People's National Bank v. Swift, 134 Tenn., 175, 183 S. W., 725; Black v. State, 130 Tenn., 529, 172 S. W., 281.

The first assignment is therefore overruled.

The second assignment raises the question that no negligence in failing to supply a good and sufficient car, or in accepting for transportation the car which the Riddle Coal Company had loaded, was shown on the part of the defendant below. All of plaintiff's evidence is quoted as follows:

"First witness for the plaintiff, R. S. Barnes:

"Q.   Your name is R. S. Barnes?   A.   Yes, sir.

"Q.   State if you were at one time connected with the Riddle Coal Company at Oneida as agent?   A.   Yes, sir.

"Q.   Do you remember the time that this car of coal was lost? A.   Yes, sir.

"Q.   Tell the court what you know about it.   A.   I remember that the Tennessee Railroad Company took a certain car of coal from the Riddle Coal Company. About three miles from the mines, the door of the car came down and lost about two-thirds of the coal.

"Q. I present you a statement showing the amount of the coal that was lost; is that a proper statement? A. This is by the Tennessee Railroad Company, this correct.

"Q. The price that was on coal at that time is a regular price, $3.35; that is, the price the Riddle Coal Company was getting for their coal? A. Yes, sir.

"Q. Will you file this statement as Exhibit A to your testimony? A. Yes, sir.

"Q. Have you been in the railroad business many years? A. I have since I was 20 years old.

"Q. What is the usual proceeding in moving these cars by the railroad company? A. When they receive the car in good condition, the rule has always been that the railroad company was liable for any loss.

"Q. You know nothing of the condition of this car of coal? A. I do not.

"Cross-examination by Chas. H. Davis:

"Q. Mr. Barnes, you are also in the business of the Paint Rock Coal field, are you not? A. I am.

"Q. Is it a part of the duty of the operators to see that the doors to the cars are properly fastened? A. It is.

"Q. I believe that this car is what we call a hopper bottom car? A. It was.

"Next witness, Starling Terry:

"Q. I will ask you if you were in the coal business about the time this car of coal was damaged in transit? A. Yes, sir.

"Q. Did you inspect this car before it was loaded? A. Yes sir.

"Q. Was that car in good condition when it left the mine? A. Yes, sir; as far as I know about it.

"Q. Is it customary to see that all cars are properly closed under the bottom? A. Yes, sir.

"Q. Where is this mine located? A. At Fogle.

"Q. Do you know where this coal was lost out of this car? A. About three miles from the tipple.

"Q. Did you know what they did with that car then? A. Brought it back to the mines, and we reloaded it.

"Q. Tell the court about the hopper bottom cars? A. You wind them up and it pulls the bottom on.

"Q. After the bottom comes loose then the coal fell out? A. Yes, sir.

"Q. Is that a habit? A. Once in a while they will do that.

"Q. If the crew had handled this car properly, would it have come loose? A. A jar at times would.

"Q. Would a bump? A. Yes, sir.

"Cross-examination:

"Q. You was the man at the mines that weighs the coal? A. Yes, sir.

"Q. This car was not in good shape? A. Yes, sir.

"Q. Did you inspect the bottom of the car before you loaded it? A. No, sir.

"Q. Very often you have to use sticks to hold the door in proper place? A. Yes, sir.

"Q. That was not done on this car? A. No, sir.

"Q. It is the duty of the coal company to see that the bottom of the car is in safe condition before the coal is loaded into the car, is it not? A. Yes, sir.

"Q. If the ratchet that winds up the doors is not in proper condition to hold the door securely, the men in charge at the mines should refuse to load the car, should they not? A. Yes, sir.

Redirect:

"Q. When is it that you have to put the sticks in the bottom to hold the door? A. When the ratchet won't hold.

"Q. You can tell when they won't hold? A. Yes, sir.

"Q. They are supposed to furnish good cars? A. Yes, sir.

"R. S. Barnes, recalled:

"Q. Is it quite frequently necessary to put sticks or pieces of wood in the bottom of the cars? A. Depends upon the make of the car; not possible to do it on some cars.

"Q. When those hopper bottom cars are in good condition, it is not necessary to do that. A. No, sir.

"Q. Does the Tennessee Railroad own any coal equipment other than its engines? A. Yes, sir.

"Q. What do they own? A. One coal gong.

"Q. What do they use that for? A. To haul coal for their own use along their line of road.

"Q. The coal cars that are furnished by the Tennessee Railroad Company to the mines for loading are not the equipment of the Tennessee Railroad Company? A. No, sir; they are not.

"Q. I will ask you to state whether or not it is absolutely necessary to brace the doors with billets of wood of a great many of the hopper bottom type of coal cars? A. It is.

"Q. If the railroad company had used the precaution to brace the bottom of this car securely by the billet or stick of wood, it would not have come down, would it not? A. No, sir.

"Q. In your experience as a coal operator have you not had to frequently do this? A. Yes, sir."

The foregoing was all the evidence that was introduced on behalf of the plaintiff, and the defendant introduced no evidence whatever.

We think that this evidence in behalf of the plaintiff, at least, tends to show that plaintiff properly inspected the car, fastened the

door, and properly loaded the car. The defendant hauled the car three miles before the bottom came loose and let the coal fall out, which fact itself tends to show that the bottom had been properly fastened, because, otherwise, the bottom would likely have come loose as soon as the car was started on its journey.

Certainly, under these facts, the burden was on the defendant to show, if it could, that the loss of the coal was the result of improper loading of the car, and not to negligent or rough handling of the car by its agents and servants. Duncan v. Great Nothern R. Co., 17 N. D., 610, 118 N. W., 826, 19 L. R. A. (N. S.), 952, and note; Illinois C. R. Co. v. Rogers, 162 Ky., 535, 172 S. W., 948, L. R. A., 1815C, p. 1220, and note, Ann. Cas. 1916E, 1201; Chicago, R. I. & P. R. Co. v. Logan, Snow & Co., 23 Okl., 707, 105 P., 343, 29 L. R. A. (N. S.), 663, and note; 10 Corpus Juris, p. 103, section 120; 10 Corpus Juris, p. 121, section 147; 10 Corpus Juris, p. 347 et seq. sections 577, 580; Craig v. Childress, Peck, 270, 19 Am. Dec., 751; Turney v. Wilson, 7 Yerg., 340; Merchants' Transportation Co. v. Bloch, 86 Tenn., 392, 6 S. W., 881, 6 Am. St. Rep., 847; L. & N. R. Co. v. Wynn, 88 Tenn., 322, 14 S. W., 311; Nashville. etc., R. Co. v. Stone, 112 Tenn., 348, 79 S. W., 1031, 105 Am. St. Rep., 955.

In this case the hauling of the coal by the defendant was under its common-law liabilities, as a common carrier, except only that the plaintiff had performed the duty of loading the car, which duty ordinarily would have been upon the defendant. Now, if the defendant had shown that the loss of the coal was on account of improper loading (particularly if the improper loading had not been such that the defendant could have detected it by the exercise of care, etc.), the defendant would have been entitled to a judgment in its favor, because the loss would have been on account of "the act or fault of the owner or shipper," which is one of the present exceptions to the carrier's common-law liability as an insurer. 10 Corpus Juris, p. 110.

But the evidence tending to show that the car had been properly loaded, and it being undisputed that the car had been hauled three miles before the bottom came loose, the burden shifted to the defendant to show that the cause of the loss of the coal was on account of one of the exceptions to its common-law liability as an insurer, which exceptions include the "act or fault of the owner or shipper," and it was not incumbent on the plaintiff to prove that the loss of the coal was on account of the negligence of the defendant in failing to supply a good and sufficient car, or in accepting the car for transportation, or otherwise.

There was no proof whatever tending to show that the defendant had undertaken to haul the coal at less than its common-law liability

except that the plaintiff loaded the car, and, "in the absence of proof to the contrary, the liability of the carrier is always presumed to be its common liability, and any party attempting to show a greater or a less liability must assume the burden of proving the contract by which the common-law liability was affected." 10 Corpus Juris, p. 110.

When the plaintiff proved that it properly loaded the car and that the coal was lost out while the defendant was hauling the car, the presumption of liability arose, and the burden shifted to the defendant to show that the loss was due to the "act or fault of the owner or shipper," or, of course, to some of the other exceptions to its common-law liability as an insurer; i. e., act of God or the public enemy, etc. The burden was not on plaintiff to show that the loss was due to the negligence of the defendant or was not due to improper loading of the car or fastening of the bottom of the car. Upon the other hand, when the plaintiff proved the loss while the car was being hauled by the defendant, and that plaintiff had properly loaded the car and fastened the bottom, it made out a prima facie case, and the burden shifted to the defendant.

Therefore the loss occurring while the car was being hauled by the defendant, we think that the only question presented by the record is: Was there any material evidence that plaintiff had properly loaded and fastened the bottom of the car?

We think the testimony of the witness Terry, coupled with the fact that the defendant hauled the car three miles before the bottom came loose, is sufficient to justify us in holding that there was some material evidence to support the finding of the trial court that plaintiff had properly loaded the car and fastened its bottom, and the defendant having introduced no proof whatever, the judgment of the trial court should be affirmed.

The costs in the court below will remain as there adjudged. The costs of the appeal will be taxed against the Tennessee Railway Company and Chas. H. Davis, surety on defendant's appeal bond.

Snodgrass and Portrum, JJ., concur.