WAYNE KNITTING MILLS, Appellant, v. DELTA MOTOR LINES and L. A. TUCKER MOTOR LINES, Appellees.—372 S. W. (2d) 419.

Western Section. October 25, 1962.

Certiorari Denied by Supreme Court May 10, 1963.

Gavin M. Gentry, Armstrong, McCadden, Allen, Braden & Goodman, Memphis, for appellant Wayne Knitting Mills.

Fierson M. Graves, Jr., Shepherd, Heiskell, Williams, Wall & Kirsch, Memphis, for appellee Delta Motor Lines, Inc.

James H. Cooper, Memphis, Spradling & Bradshaw, Cape Girardeau, Mo., and A. D. Waldaur, Memphis, for appellee L. A. Tucker Truck Lines.

CARNEY, J. The plaintiff below, Wayne Knitting Mills, brought suit for $3,000.00 against the defendants, Delta Motor Lines, Inc. and L. A. Tucker Truck Lines, Inc., for damages to thirty knitting machines which were shipped from plaintiff's plant in Jackson, Missouri, to the plaintiff's plant which was just beginning operations in Kosciusko, Mississippi.

Plaintiff's declaration averred that the machines were delivered to the defendant, L. A. Tucker Truck Lines, Inc., as a common carrier in good and undamaged condition at Jackson, Missouri; that the defendant, L. A. Tucker Truck Lines, Inc., accepted the machines for shipment to Kosciusko under a bill of lading issued therefor; that said machines were transported by L. A. Tucker Truck Lines to Memphis, Tennessee, and from there to Kosciusko, Mississippi, by the defendant, Delta Motor Lines, Inc.

Plaintiff further alleged that the machines were in a damaged condition when received by the plaintiff at Kosciusko.

Plaintiff also filed a second count in its declaration averring that under Title 49, Sections 20, paragraph (11), and 319 of the U. S. Code relating to the liability of common carriers that the plaintiff was entitled to recover from both defendants regardless of which defendant was guilty of the negligence resulting in damage to the plaintiff's property.

Each defendant denied liability and denied that it was guilty of any act of negligence resulting in damages to the plaintiff's property and insisted further that the damage to the plaintiff's knitting machines was the direct and proximate result of plaintiff's own negligence in

improperly bracing and loading the knitting machines in the trailer in which they were shipped.

Also by special plea the defendant, Delta Motor Lines, Inc., relied upon Title 49, Section 101 of U. S. Code Annotated which is as follows:

*"Loading by shipper; contents of bill; ascertainment of kind and quantity on request*

"When package freight or bulk freight is loaded by a shipper and the goods are described in a bill of lading merely by a statement of marks or labels upon them or upon packages containing them, or by a statement that the goods are said to be goods of a certain kind or quantity, or in a certain condition, or it is stated in the bill of lading that packages are said to contain goods of a certain kind or quantity or in a certain condition, or that the contents or condition of the contents of packages are unknown, or words of like purport are contained in the bill of lading, such statements, if true, shall not make liable the carrier issuing the bill of lading, although the goods are not of the kind or quantity or in the condition which the marks or labels upon them indicate, or of the kind or quantity or in the condition they were said to be by the consignor. The carrier may also by inserting in the bill of lading the words 'Shipper's weight, load, and count,' or other words of like purport, indicate that the goods were loaded by the shipper and the description of them made by him; and if such statement be true, the carrier shall not be liable for damages caused by the improper loading or by the nonreceipt or by the misdescription of the goods descripted in the bill of lading; *Pro-*

*vided, however,* Where the shipper of bulk freight installs and maintains adequate facilities for weighing such freight, and the same are available to the carrier, then the carrier, upon written request of such shipper and when given a reasonable opportunity so to do, shall ascertain the kind and quantity of bulk freight within a reasonable time after such written request, and the carriers shall not in such cases insert in the bill of lading the words 'Shipper's weight,' or other words of like purport, and if so inserted contrary to the provisions of this section, said words shall be treated as null and void and as if not inserted therein. Aug. 29, 1916, c. 415, sec. 21, 39 Stat. 541.''

His Honor the Trial Judge sitting without a jury found the issues in favor of the defendants that the plaintiff's damages were the result of the improper loading and bracing of the machines in the trailer and rendered judgment in favor of each defendant and against the plaintiff. Plaintiff, Wayne Knitting Mills, has perfected its appeal therefrom and assigned error in this court.

On this appeal it is the insistence of the plaintiff-appellant, Wayne Knitting Mills, first, that the preponderance of the evidence shows that the plaintiff did properly load and brace the machines in the trailer and that second, the defendants accepted said machines as loaded by the plaintiff for shipment and are therefore liable for the damages resulting therefrom even though plaintiff may have improperly braced and loaded said machines.

As stated above the plaintiff, Wayne Knitting Mills, already was operating a plant at Jackson, Missouri, and was in the process of opening a new plant at Kosciusko, Mississippi. Prior to the date in question the plaintiff had already shipped in its own trucks some 270 of its knitting machines from Jackson, Missouri, to Kosciusko, Mississippi; these machines usually being shipped in lots of eight and ten on each truck.

The thirty knitting machines involved in this litigation were new machines purchased from a manufacturer in New Hampshire. They were shipped in cardboard crates on wooden pallets approximately 34 inches square to the plaintiff's plant in Jackson, Missouri. There the crates were removed. Certain adjustments and settings were made on the machines for the desired type of hosiery to be made in Kosciusko, Mississippi.

The plaintiff, Wayne Knitting Mills, made request of the defendant, L. A. Tucker Truck Lines, for the use of a trailer in which it might load all thirty of the machines for shipment to Mississippi. The defendant, L. A. Tucker Truck Lines, furnished, accordingly, a Delta Motor Lines trailer because the L. A. Tucker Truck Lines stopped in Memphis, Tennessee, and it would be necessary that the goods be transferred over to the defendant, Delta Motor Lines, for shipment from Memphis, Tennessee, to Kosciusko, Mississippi.

After the trailer was placed on the plaintiff's premises in Jackson, Missouri, the plaintiff's employees took full charge of loading and bracing the thirty machines in the defendant's trailer. The machines were not recrated but they were placed in the trailer on the original wooden pallets. The machines were fastened down to

the wooden pallets by metal screws and metal strips across the four legs of each machine.

The proof shows that these knitting machines are somewhat top-heavy being approximately 5 feet high, about 2 feet or 2½ feet square and weighing from five to six hunderd pounds each. The inside of the trailer was approximately 32 feet long and 7½ feet wide. The machines were placed in the trailer in ten rows of three each. Thus it appears that practically all of the floor of the inside of the trailer was taken up with the wooden pallets on which were affixed the knitting machines.

The machines were braced on the floor of the trailer by nailing wooden 2 x 4's about 2 feet long from each one of the wooden pallets to each of the adjoining wooden pallets. Then 2 x 4's were nailed across the floor at each end of the trailer. Apparently none of the wooden pallets were nailed or screwed into the floor.

At the top of each of the knitting machines there was a steel rod extending through the center to which the thread bobbin is attached. This center pole extends above the main body of the machine and was used as the main bracing point across the top of the machines. The thread bobbin was removed and a wooden 2 x 4 was placed over the top of each center pole by drilling a hole approximately one inch in diameter through the wooden 2 x 4. The wooden 2 x 4 was then placed down over the shaft and a nail was inserted through a hole in the metal center post thus holding the 2 x 4 in place. These short 2 x 4's approximately 4 feet long went from the machine in front directly to and joined the machine directly in the rear. Thus there were then 15 short 2 x 4's each connecting two machines. 2 x 4's were then

run from side to side crosswise of the 2 x 4's connecting two machines. In other words, there were five 2 x 4's joining two machines together. The 2 x 4's running crosswise were then bolted to the 2 x 4's joining each of the two machines. Further, 2 x 4's were then run lengthwise of the trailer across the 2 x 4's which had been placed crosswise and these two 2 x 4's were then bolted together. There were no braces slanting from the machines downward to the floor or upward to the ceiling. There was a 2 x 4 nailed across the front end of the trailer and the lengthwise 2 x 4's crossed the 2 x 4 and deadheaded into the front end of the trailer.

After the machines had been loaded and braced by the plaintiff, Wayne Knitting Mills, the trailer was turned over to the defendant, L. A. Tucker Truck Lines, accepted and sealed by its employee and a bill of lading issued therefor bearing the following statement: ''1 Trailer truck, Textile knitting machines, S L & C (meaning shipper's, load and count) Trailer No. Delta 498 Seal No. 63507, Do not bump, handle carefully.''

The trailer was transported by defendant, L. A. Tucker Truck Lines, apparently without accident to Memphis, Tennessee, where it was turned over to the defendant, Delta Motor Lines, Inc. Agents or employees of Delta Motor Lines, Inc. noticed that the trailer carried only 16,500 pounds and an employee of Delta Motor Lines, Inc. opened the trailer to see whether or not there was room in there to carry additional freight to Kosciusko and beyond. After opening the doors the employee of Delta Motor Lines determined that it was not feasible to load additional freight therein and the trailer was closed and resealed. Shortly thereafter the trailer was transported by Delta Motor Lines, Inc. to Kosciusko, Missis-

sippi. When the trailer was opened by employees of Wayne Knitting Mills the wooden 2 x 4's were all broken up and the thirty machines all tilted forward against each other. Each machine was damaged.

Plaintiff proved that because of the damages en route the thirty machines which cost $3,500.00 each were reduced in resale value by approximately $15,000.00. However, the plaintiff made its own repairs to the machines and sought recovery for only the actual cost of repairs, namely $2,149.46 plus interest.

██ ██ The general rule is that a common carrier of goods is liable as an insurer for loss or damage to such goods with four general exceptions: (1) That the damages were the result of an act of God; (2) that the damages were the result of an act of the public enemy; (3) that the damages were the result of an inherent vice or defect in the goods; and (4) that the damages were the result of an act or default on the part of the shipper of the goods. 9 Am. Jur. 813, "Carriers," Section 661. A common carrier becomes liable to the shipper for damaged goods by virtue of the contract of carriage and it is not necessary for the shipper to allege or prove negligence of the carrier in order to recover. Merchants' Dispatch Transportation Co. v. Block Bros., 1888, 86 Tenn. 392, 416, 6 S. W. 881.

██ Where the shipper proves that the goods were delivered to the common carrier undamaged and that the goods were received from the carrier in a damaged condition the carrier becomes liable for the damages unless the carrier can prove that the damages were the result of one or more of the four recognized exceptions to the

carrier's liability as an insurer. Turney v. Wilson, 1835, 15 Tenn. 340.

■ His Honor the Trial Judge was of opinion that the damage to the machines was the direct result of the plaintiff's failure to brace and load properly said machines. Since the case was tried before the judge without a jury on appeal it is tried before this court de novo with a presumption of correctness of the judgment of the lower court. T.C.A. Section 27-303.

Unquestionably the damage occurred while the machines were en route from Memphis, Tennessee, to Kosciusko, Mississippi. The trailer was opened in Memphis by employees of Delta Motor Lines, Inc. and the contents of the trailer examined for the purpose of determining whether or not additional freight could be placed therein. No damage was reported by the employee of Delta at the time and the trailer was resealed before transportation to Kosciusko.

Delta's driver of the tractor trailer from Memphis to the Delta terminal in Kosciusko testified that the trip was uneventful and that no accident was had or damage done to the trailer while in his custody. This driver left the tractor trailer at the Delta terminal in Kosciusko. Another driver who did not testify drove the tractor trailer from the Delta terminal in Kosciusko approximately one-half mile to the Wayne Knitting Mills plant where the damage was discovered. There is no suggestion by any of the witnesses that the trailer was involved in an automobile collision or wreck.

■ We concur in the finding of His Honor the Trial Judge that the machines were insufficiently braced by the plaintiff's employees. The front end of the trailer was

rounded. The only bracing between the machines and the front end of the trailer were: one 2 x 4 running crossways of the trailer along the floor; one 2 x 4 running crossways of the trailer at the level of the top of the machines; and two 2 x 4's running lengthwise across the top of the machines from front to back.

None of the 2 x 4's running crossways of the trailer were tied to the sides of the trailer. At the back of the trailer there was only one 2 x 4 running crossways of the trailer nailed along the floor at the back of the three rear-most pallets. There was no bracing across the back at the top of the machines. The two 2 x 4's running lengthwise of the trailer not only were not affixed to the rear wall of the trailer but they did not even extend to the rear of the trailer; they only extended to the front side of the three rearmost machines.

Thus we have thirty top-heavy knitting machines weighing approximately 16,500 pounds sitting on the floor of the trailer. None of the pallets on which the machines were mounted were nailed to the floor. None of the bracing was attached or tied to the sides or rear of the trailer. The 2 x 4's running lengthwise of the trailer on the top of the machines were only tied or nailed to the front end of the trailer.

The only bracing tied to the floor of the trailer was the single 2 x 4 running crosswise of the trailer along the floor in front of the machines and the 2 x 4 running crosswise along the floor at the back of the machines. The thirty top-heavy knitting machines were tied together at the bottom only by the short 2 x 4's approximately two feet long each of which joined two pallets or bases together. There were no braces running from the ma-

chines to the ceiling of the trailer to keep the machines from tilting up or forward in case of a sudden stop or even in case of the trailer going down a sharp incline.

It seems very plausible to us that the continual over-the-road vibrations of the trailer with numerous sudden stops and starts uphill and downhill operated to shake the braces at the bottom of the trailer loose one by one. After the first brace became loosened every successive vibration or sudden stop or start of the trailer placed more pressure and weight on the remaining braces causing them to pull loose more quickly and this process continued until all of the short braces of 2 x 4's connecting the pallets of the machines were shaken loose and the entire bracing collapsed and splintered. Therefore, the assignments of error relating to the preponderance of the evidence as to plaintiff's proper bracing and loading of the machines are overruled.

However, the appellant contends that even though the plaintiff had improperly loaded the machines, the defendants, as motor vehicle common carriers had a legal duty to refuse to accept the shipment for carriage if improperly loaded and having accepted the trailer for shipment though improperly loaded and braced, it is liable to the plaintiff for the damages to the machines. We do not seem to have a Tennessee case directly in point on this question.

One of the cases cited and relied upon by the appellant is United States of America v. Savage Truck Line, Inc., 4 Cir., 1953, 209 F.2d 442, 44 A. L. R. (2d) 984. In the Savage Truck Line case some airplane engines encased in cylindrical containers were loaded by employees of the United States on the truck of the defendant, Savage Truck Line, for shipment. The cylinders weighed ap-

proximately 5,000 pounds each and were not securely fastened to the floor of the truck. As the truck was rounding a curve one or more of the cylinders came loose, rolled out of the truck and struck another truck owned by Brooks Transportation Co. driven by one Harris which the Savage truck was meeting. The driver of the oncoming truck was killed. Suits were brought against Savage Truck Line and also against the United States by the administrator of Harris for his death and by Brooks Transportation Co. for damages to the Brooks truck.

The judgments were rendered in favor of the plaintiffs against both the United States and against Savage Truck Line. The lower court further held that whichever defendant paid the judgments should be entitled to contribution from the other defendant. The lower court also denied the right of the United States to recover from Savage for damages to the cylinders and denied the right of Savage Truck Line to recover from the United States for damages to its truck.

The United States Court of Appeals, Fourth Circuit, held that the United States was entitled to recover from Savage Truck Line for the damages to the cylinders; that Savage was not entitled to recover from the United States for damages to his truck; that the United States was entitled to indemnity from Savage on the payment of the judgments to the original plaintiffs below. From said opinion we quote as follows:

"The primary duty as to the safe loading of property is therefore upon the carrier. When the shipper assumes the responsibility of loading, the general rule is that he becomes liable for the defects which are latent and concealed and cannot be discerned by

ordinary observation by the agents of the carrier; but if the improper loading is apparent, the carrier will be liable notwithstanding the negligence of the shipper. This rule is not only followed in cases arising under the federal statutes by decisions of the federal courts but also for the most part by the decisions of the state courts. See Alabama & V. Ry. Co. v. American Cotton Oil Co., 5 Cir., 249 F. 308; Blytheville Cotton Oil Co. v. Kurn, 6 Cir., 155 F. (2d) 467, 470; Lever Bros. v Baltimore & O. R. Co., 4 Cir., 164 F. (2d) 738; Lewis Mach. Co. v. Aztec Lines, 7 Cir., 172 F. (2d) 746; Northwestern Marble & Tile Co. v. Williams, 128 Minn. 514, 151 N. W. 419, L. R. A. 1915D, 1077; Atlantic Coast Line R. Co. v. Rice, 169 Ala. 265, 269, 52 So. 918, 29 L. R. A., N. S., 1214; 9 Am. Jur., Carriers, sec. 730. Decisions to the contrary are found in Ross v. Troy & Boston R. R. Co., 49 Vt. 364 and Rixford v. Smith, 52 N. H. 355 which were cited by the Supreme Court of Virginia in Hines v. Buchanan, 131 Va. 88, 109 S. E. 219, but in the Virginia case the court concluded that the improper loading of the car by the shipper was not apparent to the agents of the carrier who received it.

"In the pending case the judge found that the employees of the United States who loaded the truck were guilty of negligence in failing to use ordinary care to secure the engines properly and that the employees of Savage failed to exercise ordinary care in accepting the cargo in the manner in which it was loaded on the truck. He also found that the driver of the truck failed to exercise ordinary care in its operation, having knowledge of the nature of the cargo and the method of its loading and securing.

The evidence supports these findings. The loading was entrusted by the United States to two laborers without supervision. The cylinders were set on end on the floor of the truck and secured by skids and timbers and steel tape 1¼″ in width, nails being used to attach the structure to the floor of the truck which was partly decayed. The result was that the load shifted when the truck rounded the curve, traveling not over 50 miles an hour according to its driver, and the accident occurred.

"With equal certainty it was shown that the agents of Savage inspected the load before the journey was begun and that the driver concluded from his observation that the load was not properly fastened to the truck when he took charge of it. Obviously it was his duty, having this knowledge, to drive with particular attention to the speed of the vehicle but he conducted himself as if conditions were normal and the catastrophe ensued. It follows, applying the rule above set out, that Savage is not entitled to recover from the United States for damages to the Savage truck, but that the United States is entitled to recover from Savage for the damage to its airplane engines and containers."

Immediately following the Savage Truck Line case in 44 A. L. R. 2d there is an annotation beginning at page 993 entitled "Liability of carrier by land or air for damages to goods shipped resulting from improper loading." From page 1000 of said annotation we quote what appears to have the general and prevailing rule applicable to the case at bar.

"III. Where shipper loads

"Sec. 5 Carrier's liability despite improper loading; apparent defects.

"While some decisions hold or, at least, declare broadly that a carrier is not to be held responsible for loss occasioned by imperfect loading by, or other carelessness on the part of, the shipper, the general rule is that when the shipper assumes the responsibility of loading, the carrier is not liable where the defects in loading are latent or concealed so that they cannot be discovered by ordinary inspection and observation, but if the improper loading is apparent, that is, if it is a fact which addresses itself to the ordinary observation of the carrier or its servants, the carrier will be held liable notwithstanding the negligence of the shipper or his agents."

In the case at bar there was nothing latent or hidden about the improper bracing of these machines. The employee of defendant, L. A. Tucker Truck Lines, examined the machines as loaded in the trailer before accepting the same and sealing the trailer for shipment. He saw or should have seen that the machines were not sufficiently and properly braced to withstand the continued over-the-road vibrations uphill and downhill as well as sudden starts and stops of the trip from Jackson, Missouri, to Kosciusko, Mississippi. Likewise, when the employee of Delta Motor Lines opened the trailer at its terminal in Memphis, Tennessee, to determine the feasibility of adding more freight he, too, should have seen that the machines were improperly braced. Very probably some of the braces had already been broken loose at the time of the examination in Memphis, Tennessee, because

half of the trip had been completed. This person who opened the trailer in Memphis did not testify but the proof of opening was shown by the introduction of a letter written by Delta Motor Lines to the plaintiff prior to institution of suit.

■ Hence, upon the authority of the general rule quoted above we hold that the defendants were chargeable with knowledge of the improper bracing and loading of the machines and having accepted them for shipment with such knowledge are liable to the plaintiff for damages which occurred en route to Kosciusko, Mississippi. Our own cases of Tennessee Packers Inc. v. Tennessee Central Railway Co., 1958, 45 Tenn. App. 57, 319 S. W. (2d) 502, and Tennessee Railway Co. v. Riddle Coal Co., 1 Tenn. App. 129, are germane but are not controlling of the case at bar and therefore we do not discuss them in detail.

■ It follows that assignment of error No. IV must be sustained and the judgment of the lower court reversed. Plaintiff will be entitled to a judgment in this court against both defendants in the amount of $2,149.46 plus interest at 6% per annum from the date plaintiff's suit was filed. West Constr. Co. v. Seaboard Air Lines R. Co. (1918) 141 Tenn. 342, 210 S. W. 633 and Inter-City Trucking Co. v. Mason & Dixon Lines (1955) 38 Tenn. App. 450, 276 S. W. (2d) 488.

The costs will be taxed against the defendants.

Bejach, J., concurs.

Avery, (P.J., W.S.), (dissenting).

I respectfully dissent from the opinion of the majority of this Court for reasons which to me appear clearly in the record. In the majority opinion it is said:

(1) "On this appeal it is the insistence of the plaintiff-appellant, Wayne Knitting Mills, first, that the preponderance of the evidence shows that the plaintiff did properly load and brace the machines in the trailer * * *"

That is a correct statement of the contention made by the plaintiff-appellant. The majority opinion then said:

(2) "The defendants accepted said machines as loaded by the plaintiff for shipment and are therefore liable for the damages resulting therefrom even though plaintiff may have improperly braced and loaded said machines."

We do not understand from the statement of facts and brief filed by the plaintiff-appellant that No. 2 above correctly states its position. In its brief at page two under the heading "Statement of the case and action of Trial Court", after setting out the circumstances of its first contention as outlined under No. 1 above, the appellant said:

"Further, the contention of the plaintiff is that defendants, as motor vehicle common carriers, had a duty to refuse to accept the shipment if improperly loaded. Therefore, a further principal question in this cause is whether or not the proximate cause of the loss was the defendants' negligence in accepting the machines as loaded if the machines were improperly loaded."

If I understand the contention under No. 2 above of plaintiff-appellant, it simply means that the carriers were negligent in making an inspection in order to determine whether or not the machines were properly loaded and braced by the shipper.

The majority opinion finds, as did the trial court, that the loading, crating, packing and bracing was all done by the shipper, plaintiff Wayne Knitting Mills, at its plant in Jackson, Missouri, with its own bracing material and was ready for carriage to its plant at Kosciusko, Mississippi.

The lower court found that the proof shows there was no negligence in inspection by the carriers and therefore no duty required of them to reject the shipment, and that the loading and bracing was not properly done. When it arrived at Kosciusko there was some damage to the machines.

The majority opinion finds that there was negligence in the inspection by the carriers and that they should have rejected the shipment because improperly loaded and braced and that such negligence of inspection was the proximate cause of the plaintiff's damage. There is no other interpretation that can be put on the majority opinion. With this particular finding I respectfully disagree.

Let us look for a moment to just what did happen as the reason why shipper did its own loading, packing and bracing: Pat Conner, the manager of the Wayne Knitting Mills plant at Jackson, Missouri, testified that:

"Q—Before the machines were loaded did you request a trailer from one of the defendant carriers?

"A—Yes sir; I personally, I think—well I know I did, I personally called someone at Tucker and explained the situation to them, told them we were in a hurry to get the machines to Mississippi, told them we wanted the trailer to load our machines on, and we wanted to brace these machines in the trailer

because we thought we could do a better job by having the whole trailer. We wanted to avoid the transfer of them here at Memphis, or anyone handling the machines, because we did not want them to be damaged.''

There is no necessity to go into just how these machines were braced in the car. The majority opinion reasonably explains that, though not perfectly as is shown by this proof. However, after this truck or trailer was loaded the three rows of machines which were six feet high, and upon the pads as stated and braced as shown, which is practically stated in the majority opinion, extended from sidewall to sidewall of the inside of the trailer. The square mats at the bottom were 2½ feet each with three in a row crosswise the trailer and 10 in a row lengthwise the trailer and the inside width of the trailer was 7½ feet. My mathematics is that 3 x 2½=7½ feet. Thus the complete width of the trailer floor was covered. The timber braces were interwoven at the bottom and across the top of machines both width wise and lengthwise of the trailer interior. You could not even see up the side of the trailer at the floor because these machines as braced, filled that part of it completely and for all practical purposes, the whole interior of the trailer from top to bottom was filled.

After this crating, packing and bracing had been done at the plant of the plaintiff in Jackson, Missouri, Mr. Conner, who ordered the trailer, called the L. A. Tucker Lines and told them that the trailer was loaded and ready to go.

The proof is unquestioned that then Mr. Tucker came down, opened these back doors, looked in at the inside of

that trailer, saw these machines and saw this bracing etc. in there, he could not get into the trailer and see the front end from that rear because it was completely filled. He did make the inspection from the ground in the way that is required when the shipper does his own crating, loading and bracing.

It is admitted that a carrier in the ordinary sense of the term is an insurer, but my dissent is based upon the strict exception to that rule, that when the shipper does his own loading and bracing the only other thing necessary for the carrier to do is to make such inspection as he can as he looks into the trailer from the best advantage points from which he can view the packing and bracing, seal and carefully transport the material.

It is stated, and I think it is a correct statement, that:

"The carrier is responsible only for such defects in a shipment loaded by the shipper as may be discoverable by such visual inspection as it is able to make, and it is not responsible for imperfect packing or other carelessness on the part of the shipper." Tennessee Railway Co. v. Riddle Coal Co., 1 Tenn. App. 129; United States v. Savage Truck Line, (4th Circuit 1953) 209 F. (2d) 442, 44 A. L. R. (2d) 984; Blytheville Cotton Oil Co. v. Kurn, et al., (6th Cir. 1946) 155 F. (2d) 467; Emerson Electric Mfg. Co. v. Terminal Railway Association of St. Louis, (Mo. App. 1953) 262 S. W. (2d) 323; 13 C. J. S. Carriers sec. 78, p. 149, 151.

Whenever there is defect in loading not perfectly apparent, the test is one of ordinary observation. Blytheville Cotton Oil Co. v. Kurn, (6th Cir. 1946) 155 F. (2d) 467;

Modern Tool Corp. v. Pennsylvania R. Co., 100 F. Supp. 595 (N. J. 1951) 13 C. J. S. Carriers sec. 67, p. 125.

The shipper being the best judge of the manner in which goods have been packed and knowledge of some defect in packing by the carrier does not render it liable if it is not apparent to ordinary observation that the goods cannot be safely carried in the condition in which presented. Modern Tool Corp. v. Pennsylvania Ry. Co., 100 F. Supp. 595, (N. J. 1951); Emerson Electric Mfg. Co. v. Terminal R. Ass'n., 262 S. W. (2d) 323 (1953); 13 C. J. S. Carriers sec. 78, p. 150, 151.

If we understand the meaning of the majority opinion it is simply this: The shipper loaded and braced his own material, having told the carrier that he wanted to do that thing. He notified the carrier that the shipment was ready. The carrier came and did a careless inspection to determine whether or not he would accept it for carriage or reject it, did not perform its duty in making a sufficient inspection and therefore when the machines arrived at the destination in a damaged condition, he is liable even with the great preponderance of proof showing a careful and proper uneventful carriage.

When this trailer-truck was transported from Jackson, Missouri to Memphis, Tennessee, which is approximately one-half of the distance from Jackson, Missouri to Kosciusko, Mississippi, it was turned over to defendant Delta Truck Lines in whose trailer it had been loaded at Jackson, Missouri. The representative of the Delta Truck Lines opened the rear doors of that truck to determine whether or not that other merchandise could be put into the truck or trailer for carriage on down. The proof shows that he observed immediately that such could not be done and resealed the door.

In the appellant's brief, page 5, paragraph 8, it is said:

"The shipment of machines arrived safely without damage at Memphis, Tennessee, having been transported approximately one-half of the distance from origin to destination without damage.

   \*     \*     \*     \*     \*     \*     \*     \*

"This shipment of thirty machines traveled without being damaged over approximately one-half of the route. The drivers testified the damage did not occur between Jackson, Missouri, and Memphis, Tennessee, and the trailer doors were opened in Memphis, and no damage noted."

The declaration in its first count has alleged common law liability based upon negligence, and in the second count it has alleged violation of the statutes of the United States, Section 20, par. (11), and 319, Title 49 U.S. Code, which reads as follows:

(The statute is quoted in the declaration but not necessary to quote here in this opinion)

What it does as relates to this case is to make all carriers liable for damages caused by the negligence of any one carrier.

In the pleading to the declaration there is a special plea filed by way of amendment in which it is alleged that the bill of lading by which this L. A. Tucker Truck Line, Inc., issued to the shipper shows it to be "Shipper's load and count", then there is the plea as provided by Title 49, Section 101 of U.S. Code Annotated creating an exception to the liability of a carrier when the loading is done by the shipper, the bracing is done by the shipper, the counting

is done by the shipper and changes the rule with respect to burden of proof and liability. That section is as follows:

"Sec. 101. Loading by shipper; contents of bill; ascertainment of kind and quantity on request. When package freight or bulk freight is loaded by a shipper and the goods are described in a bill of lading merely by a statement of marks or labels upon them or upon packages containing them, or by a statement that the goods are said to be goods of a certain kind or quantity, or in a certain condition, or it is stated in the bill of lading that packages are said to contain goods of a certain kind or quantity or in a certain condition, or that the contents or condition of the contents of packages are unknown, or words of like purport are contained in the bill of lading, such statements, if true, shall not make liable the carrier issuing the bill of lading, although the goods are not of the kind or quantity or in the condition which the marks or labels upon them indicate, or of the kind or quantity or in the condition they were said to be by the consignor. The carrier may also by inserting in the bill of lading the words 'Shipper's weight, load, and count,' or other words of like purport, indicate that the goods were loaded by the shipper and the description of them made by him; and if such statement be true, the carrier shall not be liable for damages caused by the improper loading or by the nonreceipt or by the misdescription of the goods described in the bill of lading: Provided, however, where the shipper of bulk freight installs and maintains adequate facilities for weighing such freight, and the same are available to the carrier, then the carrier, upon written request of such shipper and

when given a reasonable opportunity so to do, shall ascertain the kind and quantity of bulk freight within a reasonable time after such written request, and the carriers shall not in such cases insert in the bill of lading the words 'Shipper's weight,' or other words of like purport, and if so inserted contrary to the provisions of this section, said words shall be treated as null and void and as if not inserted therein. Aug. 29, 1916, c. 415, sec. 21, 39 Stat. 541.''

Copy of the original bill of lading was filed as a part of the proof in this case and it shows on its face by the letters ''SL&C'' that it was received ''Shipper's weight load and count'' specifically under this exception to the rule when stated in U. S. C. A. Title 49, par. (11) 319.

The carriers from Memphis to the plant in Mississippi, which was the destination of this shipment, testified positively that there was no extra shaking; that there was no collision; that there was careful driving of this load of equipment; that it traveled over the regular route; that nothing happened out of the ordinary and that there was nothing careless or negligent in this process of transportation. That is not denied in the least.

In discussing this case then, unless the doctrine of res ipsa applies, we have the positive proof by the plaintiffs themselves, as set out in their briefs, that there was nothing appearing when this truck came to Memphis that indicated any damage whatever. That it was observed by the carrier at the time that it left Jackson, Missouri, and that with the inspection it could make from the ground it appeared to be properly packaged, so that unless the doctrine of res ipsa applied to the extent that because there was some damage to the machines when they

reached their destination that would absolutely warrant the disbelief of the drivers of these freight lines and warrant the Court in refusing to believe them, which the trial court didn't do, but evidently did believe them, and with the proof in the record, admitted by the plaintiffs that all of the loading and bracing was done by them, at their request and giving consideration to the fact that they knew how they wanted it braced in that truck, it certainly seems that this exception is applicable, and that these carriers are, therefore, exonerated in accord with that foregoing exception respecting the liability of the carrier. In other words the carrier gave it all the inspection it could, it transported it carefully from the time it was loaded and ready for shipment in accord with the shipper's notice until its delivery, the trial court seeing these witnesses and understanding what they said, their demeanor on the stand, their personal interest, if any, in the outcome, it would appear that the trial court was correct in holding no liability on the part of the carriers. We are required to presume his judgment correct in considering the facts of this case on the involved issues against it. (T. C. A. 27-303).

The majority opinion seems to rest its conclusions entirely upon the case of the United States of America v. Savage Truck Lines, Inc. et al., in the United States Court of Appeals, 4th Circuit, Dec. 21, 1953, 209 F. (2d) 442, 444, 44 A. L. R. (2d) 984. The headnote in that case appearing at page 985 of 44 A. L. R. (2d) is headnote 7, and in that headnote it is said:

"As between a shipper who is negligent in the manner of loading heavy goods on a motor carrier's truck and the carrier whose driver is negligent in his acceptance of the goods and manner of operating

the truck notwithstanding his knowledge of the faulty loading, the carrier is properly regarded as principally at fault, and as liable to indemnity the shipper for payments to a third person for damages resulting from a collision due to the goods breaking loose, in view of the carrier's contractual duty to the shipper to carry the goods safely and its *last clear chance* to avoid the accident. (Emphasis added).

It is my contention that there is no application whatever of the law in the Savage case which controls the instant case. Here is what that opinion in the Savage case says the facts are:

"Savage was a common carrier and as such was engaged under a contract with the United States in transporting in its truck from Norfolk, Virginia, to Quonset Point, Rhode Island, a cargo of six airplane engines encased in cylindrical containers. Immediately before the accident the truck was proceeding northwardly in its right hand northbound lane of the highway and was rounding a curve from southeast to northeast when one or more of the cylinders shifted to the left causing the vehicle to cross over the double center line into the southbound passing lane. At this moment the Brooks truck was proceeding southerly in its right hand southbound lane and as the two trucks passed one another, one of the cylinders fell off the Savage truck upon the Brooks truck and killed its driver instantly.

"The cylinders weighed 5,000 pounds each. They were 5'5" in diameter; and five of them were 9'3" and one of them 7'7" in height. They were loaded upon the trucks by agents of the United States and

placed in an upright position extending above the 7′ sides of the uncovered vehicle. They were fastened to the floor of the truck but not sufficiently to stand the strain as the truck sped around the bend in the road, and consequently they came loose causing the truck to swerve across the road, and one of them crashed through the left rear end of the truck and came into collision with the passing vehicle and its driver. The Savage truck continued across the road and turned over on its right side while the Brooks truck turned over on its right side, both on the western shoulder of the highway.''

The opinion then says that four suits were instituted against Savage and the United States. The administrator of deceased sued both Savage and the United States in separate suits for the damage for his death. Brooks filed separate suits, one against Savage and one against the United States for damage to his truck. The United States as defendant in two of the suits, filed a third party complaint against Savage seeking recovery for the damage to the engines and for indemnity for any liability that might be established against the United States in favor of the primary plaintiffs. Savage, as defendant in two of the suits, filed a third party complaint against the United States claiming indemnity for any liability that might be established against it in favor of the primary plaintiffs. Savage also filed a counterclaim for damages to its truck in the third party proceeding instituted by the United States in the suit of Brooks v. United States.

All four of these cases were consolidated for trial. The two suits against Savage were tried to a jury, while the two suits against United States under the Federal Tort Claims Act were tried before the District Judge. The jury

found a verdict against Savage for $15,000 in favor of the executrix for the death of Harris, and a verdict for $5844.83 in favor of Brooks for the stipulated damages to the truck. The Judge held that the agents of the United States were guilty of negligence in failing to fasten the cylinders securely upon the truck, and that Savage was guilty of negligence in accepting the cargo for transportation and in operating the truck with knowledge of this condition. Accordingly he entered judgment against the United States in favor of the primary plaintiffs in the same amounts as were found by the jury in the cases against Savage.

The Judge also held that if either the United States or Savage paid the judgments against it in favor of the primary plaintiffs, it was entitled to contribution from the other; but that the United States was not entitled to recover from Savage under its third party complaint for damages to the cylinders, and that Savage was not entitled to recover from the United States under its counterclaim for damages to its truck. By these holdings the Judge also denied the claim of the United States against Savage and the claim of Savage against the United States for indemnity.

In that case the Circuit Court of Appeals reversed the Trial Judge in part, found on page 446 of 209 F. (2d), on page 991 of 44 A. L. R. (2d), and said:

''With equal certainty it was shown that the agents of Savage inspected the load before the journey was begun and *that the driver concluded from his observation that the load was not properly fastened to the truck when he took charge of it. Obviously it was his duty, having this knowledge, to drive with par-*

*ticular attention to the speed of the vehicle but he conducted himself as if conditions were normal and the catastrophe ensued.''* (Emphasis added)

With that finding the Circuit Court of Appeals, Division IV held that the carrier was liable for the damages to the shipment of tanks. That is the applicable part, if any whatever, to our present issue.

To me there is no semblance of the opinion in the Savage Truck Line case, as the facts are stated therein, to the one before us. In that case there are two or three things that stand out like a sore thumb. They are as follows:

First, that each piece of cargo was round, it shows that it was cylindrical.

Secondly, it shows that the truck's own driver suspected and knew that these cylindrical tanks were not properly fastened in that truck.

Thirdly, it shows that the driver, with that personal knowledge on his part, rounded the curve at a speed of 50 miles an hour and that this cylindrical multiple thousand pound tank rolled to the side of that truck, broke through it and rolled against the truck which it met. The contrast then is clear. In our case the cargo was flat at its bottom. It was placed upon the bottom of the truck from side to side completely filling the interior and the braces across the end, across the top and across the bottom were put there all by the shipper in such a fashion that the inspection to be made or that may have been required of the trucker was to open the rear doors of that truck and see as best he could the contents or the method of loading, the braces etc. all of which was done, and he concluded that

the loading was proper, even though it later showed to be imperfect and to be the cause of any damage to these machines.

And in that annotation discussing this exception to the rule when the cargo is loaded and braced by the shipper, it is said:

"While some decisions hold  or, at least, declare broadly that a carrier is not to be held responsible for loss occasioned by imperfect loading by, or other carelessness on the part of, the shipper, the general rule is that when the shipper assumes the responsibility of loading, the carrier is not liable where the defects in loading are latent or concealed so that they cannot be discovered by ordinary inspection and observation, but if the improper loading is apparent, that is, if it is a fact which addresses itself to the ordinary observation of the carrier or its servants, the carrier will be held liable notwithstanding the negligence of the shipper or his agents."

Now that rule is adopted in a great number of cases reported in that annotation by the United States, by the States of Alabama, Illinois, Minnesota, North Dakota, Virginia, Wisconsin and when we come to the case of Blytheville Cotton Oil Co. v. Kurn, (1946 C. A. 6th Tenn.) 155 F. (2d) 467, the Court said:

The rule seems to be clear that when a fully loaded car is delivered to the railroad, the railroad company is responsible only for such defects as may be discoverable by such visual inspection as it is able to make, and it is not responsible for imperfect packing or other carelessness on the part of the shipper."

The simple statement, as I understand it to be the law in Tennessee , Missouri, many other States and the United States, is that if the shipper has loaded the cargo, braced it, made it ready to carry, notified the carrier that it wanted to do that particular thing for the reason that it understood better how to package it than the carrier did, advised carrier that it is ready to roll, and there is not a patent defect of the loading which can be seen by the observation the carrier can make on inspection from the only available opening, the carrier is not liable in the absence of something which occurred as did in the Savage case, where he knew that the cargo was not properly loaded. Particularly is this true when every foot of the carriage route from point of departure to point of delivery is shown to have been carefully, and without any negligent operation whatever, or accident of any kind occurring, performed perfectly.

Thus, in view of the finding of the Court below, and the presumption that prevails in this State with respect to his finding of facts, and the record as we find it here, it is clear to the writer of this opinion that his judgment should be affirmed.